**WESTERN REFINING CORP., a Colorado corporation; Midwest Grain Products, Inc., a Kansas corporation; Energy Sales, Inc., a Missouri corporation; Highway Oil Company, a Kansas corporation; and Georgia–Pacific Corporation, a Georgia corporation; and Loco, Inc., a Colorado corporation, Plaintiffs–Appellants,**

v.

**STATE of Colorado, DEPARTMENT OF REVENUE; Alan Charnes, Executive Director of the Department of Revenue; and State of Colorado, Department of Highways, Defendants–Appellees.**

No. 87CA1207.

Colorado Court of Appeals,
Div. IV.

Sept. 15, 1988.

Rehearing Denied Oct. 6, 1988.

Certiorari Denied Jan. 3, 1989.

Sabey, Epstein, Ordelheide & Smith, P.C., Melvin B. Sabey, Denver, for plaintiffs-appellants.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Chris J. Elipoulos, Sp. Asst. Atty. Gen., William H. Bassett, Asst. Atty. Gen., Denver, for defendants-appellees.

Bernick & Moch, Robert B. Moch, Denver, for amicus curiae, Total Petroleum, Inc.

HUME, Judge.

Plaintiffs, Western Refining Corp., Midwest Grain Products, Inc., Energy Sales, Inc., Highway Oil Company, Georgia Pacific Corporation, and Loco, Inc., appeal the summary judgment in favor of defendants, the Colorado Department of Revenue, Alan Charnes, and the Department of Highways (State). Plaintiffs (suppliers), who are all in some way involved in the gasohol supply industry in Colorado, contend that the district court erred in its interpretation of § 39–27–101, et seq., C.R.S. (1987 Cum. Supp.) (Act), and in dismissing their complaint, which sought a judgment declaring their entitlement to taxation at the reduced gasohol rate, rather than at the gasoline rate, and a decree enjoining the State's refusal to assess their product at the lower rate. We agree, reverse, and remand with directions.

Although the district court made no findings or conclusions when it ruled in favor of the State on the parties' cross-motions for summary judgment, the controversy below focused upon the parties' divergent views about the construction of § 39–27–102(1)(a)(III)(A), C.R.S. (1987 Cum. Supp.). Therefore, on appeal, the parties assume, as do we, that the district court was persuaded that the State's interpretation of the statute was correct.

The Act imposes an excise tax upon Colorado gasoline distributors or refiners for all non-aviation gasoline sold, offered for sale, or used in Colorado. The disputed subsection provides for a five cent per gallon reduction in the rate of tax on gasoline blended with alcohol (gasohol). It states, in pertinent part:

"Notwithstanding [the rate established for gasoline,] gasoline which is blended with at least ten percent ... alcohol ... shall be taxed five cents per gallon less than [unblended gasoline].... Such tax reduction shall be limited to such blended gasoline which is produced from no more than two and one-half million gallons of alcohol annually from each facility ... *having a design production capacity* of five million gallons or less per year of alcohol *as reported* in each calendar year on [designated federal forms] or their revisions *as wine gallons distributed or sold for fuel purposes....*" Section 39–27–102(1)(a)(III)(A), C.R.S. (1987 Cum. Supp.) (emphasis added).

The State contends that the statutory requirements for entitlement to the "nickel reduction" include: (1) that the distributor buy no more than two and one-half million gallons of alcohol annually from any given alcohol producer; (2) that the producing facility from whom alcohol is purchased have a design production capacity of five million gallons or less per year; and (3) that in computing the design production capacity of a facility, its entire alcohol production capacity, rather than just its fuel alcohol production, must be considered in ascertaining whether the five million gallon limit is exceeded. *See* Colorado Department of Revenue, Revenue Bulletin 85–3.

The suppliers do not quarrel with the first requirement, but they contend that the second and third requirements advocated by the State are contrary to the terms of the statute. We agree.

We presume that the General Assembly intended the entire statute to be effective and that it intended a just and reasonable result, feasible of execution. *See* § 2–4–201(1), C.R.S. (1980 Repl.Vol. 1B). Words and phrases must be construed according to their familiar and generally accepted meaning. Section 2–4–101, C.R.S. (1980 Repl.Vol. 1B). A statute must be read and construed as a whole, in order to ascertain the General Assembly's intent in passing it. *People v. District Court,*

713 P.2d 918 (Colo.1986). Every word must be given effect, to the extent possible, consistent with the intent and purpose of the General Assembly. *Johnston v. City Council,* 177 Colo. 223, 493 P.2d 651 (1972). And, where the language of a statute is plain and its meaning is clear, it must be applied as written. *Heagney v. Schneider,* 677 P.2d 446 (Colo.App.1984).

Applying those standards to the statute in question, we conclude that the district court erred in adopting the construction urged by the State. The statute extends the "nickel reduction" to gasohol produced with *alcohol* purchased from producers "having a *design production capacity* [not exceeding five million gallons] of alcohol *reported in each calendar year ... as wine gallons distributed or sold for fuel purposes.*" (emphasis added)

The State's argument focuses narrowly on the terms "design production capacity" and "alcohol" to the exclusion of the subsequent language which qualifies those terms. The State urges that any alcohol purchased from an alcohol producer whose plant facility is designed to be capable of annually producing over five million gallons of any form of alcohol disqualifies the purchasing distributor from receiving the "nickel reduction" on gasoline blended with such alcohol. To adopt that interpretation would require us totally to disregard the qualifying phrase "reported in each calendar year ... as wine gallons distributed or sold for fuel purposes," in contravention of the statutory rules of construction.

The qualifying phrase limits and modifies both the preceding word "alcohol" by the addition of the phrase "for fuel purposes," and the preceding term "design production capacity" by the addition of the term "distributed or sold." Had the General Assembly intended to use total alcohol production in computing the five million gallon limit, there would have been no reason or purpose in its subsequent use of the words "for fuel purposes." Similarly, had there been an intent to base the five million gallon limit on a production facility's "design production capacity" the General Assembly would have had no reason for adding the words "distributed or sold" in qualifying the method of calculating that limit.

Consistent with this construction, the General Assembly's use of the term "reported in each calendar year" is more consistent with an intent to measure a facility's capacity by its actual production and sales, than with an intent to adopt the more static condition of its "design production capacity." Production and sales records would reflect market conditions as well as plant design capacity, and more rapid fluctuations might be anticipated in production and sales than in plant design capacity, which would not routinely change from year to year.

In support of its proposed interpretation, the State relies on *Archer Daniels Midland Co. v. State,* 690 P.2d 177 (Colo.1984) and § 2–4–208, C.R.S. (1980 Repl.Vol. 1B). That reliance is misplaced.

Although the supreme court construed the predecessor to the statute now in dispute in *Archer Daniels,* the issue presented in that case was whether the statute then in effect constituted an unconstitutional restraint of trade in violation of the Commerce Clause of the United States Constitution. The court's language purporting to interpret the quantity qualifications necessary to establish an applicant's eligibility for the "nickel reduction" under that statute was dictum. Moreover, the statute under scrutiny in *Archer Daniels* did not contain the qualifying language central to the dispute in this case. Thus, that decision lends no support to the State's argument here. *See Creacy v. Industrial Commission,* 148 Colo. 429, 366 P.2d 384 (1961).

The State also contends that the General Assembly's statutory reference to specific forms, which were either non-existent, or which did not contain adequate information necessary to permit defendants to ascertain either "design production capacity" or "wine gallons distributed or sold for fuel purposes," renders the statute ambiguous, and requires us to consider extrinsic evidence to aid in interpreting the statute. We disagree.

The statute sets forth the General Assembly's intent to establish the "nickel reduction" and the conditions which must be met to qualify gasohol distributors for that benefit with clarity. While the statutory reference to specified federal forms presents practical difficulties in administering the statute, that reference does not render the statute's operative meaning ambiguous. *See Flank Oil Co. v. Tennessee Gas Transmission Co.*, 141 Colo. 554, 349 P.2d 1005 (1960).

The executive director of the department of revenue has been expressly empowered "to make and adopt such rules and regulations relating to the administration and enforcement [of the statute] as may be deemed proper ... and to regulate the mode and manner of all investigations and hearings, and to alter and amend the same." Section 39–27–116, C.R.S. (1982 Repl.Vol. 16B). This statute authorizes the executive director to adopt additional rules, regulations, forms, and procedures necessary to administer and monitor distributors' eligibility for the "nickel reduction." *See also* §§ 39–27–105 through 39–27–114, C.R.S. (1982 Repl.Vol. 16B) for additional express administrative and enforcement powers which have been granted to the executive director.

█ Since we have concluded that the statute is not ambiguous and that it expressly requires that the determination of a distributor's eligibility for the "nickel reduction" be made on the basis of the fuel alcohol sold or delivered, we do not address the arguments presented by the parties based upon extrinsic evidence of legislative intent. *See Colorado State Civil Service Employees Ass'n v. Love*, 167 Colo. 436, 448 P.2d 624 (1968).

█ Moreover, even if we were to determine the Act to be irreconcilably ambiguous, such ambiguity in this taxation statute must be construed in favor of the taxpayer and against the government. *See Associated Dry Goods Corp. v. City of Arvada*, 197 Colo. 491, 593 P.2d 1375 (1979). Here, the Act is part and parcel of a tax-imposing statute. It provides for differing rates of taxation, rather than for exemption from taxation, so a presumption in favor of the taxpayer would control in the event of irreconcilable conflict or ambiguity.

The summary judgment is reversed, and the cause is remanded for entry of a declaratory judgment conforming to the views expressed in this opinion, and for such further proceedings as may be necessary to dispose of the claim for injunctive relief.

BABCOCK and NEY, JJ., concur.