HILLSIDE COMMUNITY CHURCH, S.B.C., a non-profit corporation; First Bank of Arvada, N.A; The City of Golden, a Colorado municipal corporation; and the City Council of the City of Golden, Petitioners,

v.

Marian L. OLSON and Ida M. Brueske, Respondents.

The City of Golden, a Colorado municipal corporation; and the City Council of the City of Golden, Petitioners,

v.

Marian L. Olson and Ida M. Brueske, Respondents.

Nos. 01SC808, 01SC878.

Supreme Court of Colorado.

Nov. 25, 2002.

Rehearing Denied Dec. 16, 2002.

The Overton Law Firm, Thomas J. Overton, Denver, CO, Attorneys for Petitioner Hillside Community Church.

Otten, Johnson, Robinson, Neff, & Ragonetti, PC, J. Thomas MacDonald, Griffiths, Tanoue, Light, Harrington & Dawes, P.C., Steven J. Dawes, Denver, CO, Attorneys for Petitioners City of Golden and The City Council of the City of Golden.

Victor F. Boog & Associates, PC, Victor F. Boog, Linda A. Battalora, Lakewood, CO, Attorneys for Respondents.

Geoffrey T. Wilson, Carolynne C. White, Denver, CO, Attorneys for Amicus Curiae the Colorado Municipal League.

Josh A. Marks, Hall & Evans, LLC, Denver, CO, Attorneys for Amicus Curiae Colorado Counties, Inc.

Justice RICE delivered the Opinion of the Court.

In this combined proceeding, we granted certiorari to determine whether the requirement in the Golden Municipal Code (GMC) that a public hearing be held before a special use permit is issued affords neighboring landowners a property right in that procedure warranting the protection of Fourteenth Amendment due process guarantees.[1]

The trial court held, and the court of appeals affirmed, that Respondents had a legitimate claim of entitlement to notice of, and participation in, a public hearing regarding a special use permit for Hillside Community Church's building addition. They concluded that this entitlement was a property right warranting procedural due process protection. Accordingly, because no public hearing was held as required by the GMC, both courts held that Respondents' due process rights were violated pursuant to their claim under 42 U.S.C. § 1983. In addition, because 42 U.S.C. § 1988 provides for an award of attorney fees to the prevailing party in a § 1983 claim, the court of appeals affirmed the trial court's grant of attorney fees to Respondents in a separate opinion.

We reverse. We hold that procedural guarantees stemming from state law or local ordinance do not create a constitutionally cognizable property interest. As such, they cannot be the basis of a meritorious § 1983 claim, and hence, the award of attorney fees to Respondents under § 1988 was improperly granted. We further conclude that Respondents had an adequate remedy for their

claims under state law, and therefore no basis upon which to seek recourse under § 1983.

## I. FACTS & PROCEDURAL HISTORY

This case arose from a dispute between the Hillside Community Church (Hillside) and Respondents Marian L. Olson and Ida M. Brueske, over the construction of an addition to the church. Respondents own and reside in homes adjacent to the church property in Golden, Colorado. In the spring of 1997, Hillside began construction activities on its property without investigating applicable planning and zoning requirements, and thus without obtaining a permit of any kind. Although Hillside belatedly obtained a "Foundation Only" permit in May of 1997, it subsequently exceeded the bounds of that permit by commencing construction on the addition itself. Petitioner, the City of Golden, eventually issued a building permit to Hillside in October of 1997.

In April of 1998, when the addition was substantially complete, Respondents asserted to the City of Golden that Hillside should have obtained a special use permit prior to construction, that the addition might be in violation of height limitations applicable to the R 1 zone district, and that other code provisions were being violated.

In May of 1998, the City Attorney for Golden agreed, determining that Hillside's building permit had been improperly granted because the church addition constituted an extension of a non-conforming use in the R 1 zone district. Under the requirements of the GMC, the extension of a non-conforming use was precluded unless a special use permit had been obtained. The GMC further mandated that before a special use permit could be issued, a public hearing must be held and neighboring landowners given notice and an opportunity to participate. This had never occurred with regard to the church addition. Although acknowledging the mistake, the City Attorney did not require that a special

---

1. We granted certiorari on the following issue: Whether the failure to conduct a public hearing on a landowner's application for a special use permit pursuant to a provision of a municipal code, which grants adjacent landowners the right

to notice of and an opportunity to participate in such hearing, violates the adjacent landowners' procedural due process rights, even though adjacent landowners successfully sued for mandamus to remedy the mistake.

use permit be obtained or a hearing held after the fact, because the addition was by then substantially complete. He also declined to revoke the building permit or require that the addition be modified or torn down, relying on the doctrine of relative hardship set forth in *Hargreaves v. Skrbina*, 662 P.2d 1078 (Colo.1983). In June, Hillside belatedly obtained a five-foot height variance. In November, the City issued a certificate of occupancy to Hillside for the addition.

In June of 1998, Respondents filed suit in the district court seeking injunctive relief and mandamus under C.R.C.P. 106(a)(2). They alleged six claims for relief,[2] among them a violation of their rights under 42 U.S.C. § 1983. That statute states, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . . .

42 U.S.C. § 1983 (2000). Specifically, Respondents claimed that because Golden had issued a building permit to Hillside without granting them an opportunity to participate in the special use permit hearing as mandated by the GMC, Respondents had been deprived of a property interest in violation of their due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution.

The trial court ordered the City to set aside the height variance, vacate the certificate of occupancy, hold a hearing as required by the GMC pursuant to the issuance of a special use permit, and only reissue a certificate of occupancy upon approval of the special use permit and compliance with all other provisions of the GMC. Provided that the special use permit was ultimately granted, however, and finding that Hillside had relied in good faith on the assurances of the City, the court declined to order the church addition altered or removed, citing the doctrine of relative hardship. Finally, the trial court held that Respondents had a "constitutionally protected property interest to see that local zoning and planning ordinances are followed, where non-compliance affects their property." *Olson v. Hillside Cmty. Church*, No. 98CV1842, slip op. at 19 (Colo.Dist.Ct.1999). Having thus concluded that Respondents had prevailed in their claim under 42 U.S.C. § 1983, the trial court ordered reasonable attorney fees awarded to them pursuant to 42 U.S.C. § 1988.

The court of appeals affirmed Respondents' § 1983 claim, but reversed on the relative hardship doctrine. The court concluded that Hillside had not, in fact, acted in good faith, and hence should not be afforded the positive presumption of that doctrine. It accordingly reversed the trial court's ruling on that issue, and remanded to the trial court to require Hillside to modify the church addition to comply with existing GMC ordinances.[3] In affirming the Respondents' § 1983 claim, the court of appeals held that they had a "legitimate property interest arising from the GMC" and their "procedural due process rights were violated." *Olson v. Hillside Cmty. Church*, 42 P.3d 52, 55 (Colo.

---

**2.** In addition to their claim under 42 U.S.C. § 1983, Respondents also alleged that: (1) Hillside had impaired their prescriptive right of access over and across the church property; (2) Hillside had violated numerous provisions of the GMC and the Uniform Building Code, entitling them to relief under C.R.C.P. §§ 106(a)(2) and 65(a); (3) the City of Golden had improperly granted Hillside a building permit and must accordingly direct the church to remove the addition; (4) the City Council had exceeded its jurisdiction and abused its discretion in granting the variance to Hillside; and (5) the City of Golden had violated the Establishment Clause of the

First Amendment of the United States Constitution by giving preferential treatment to churches.

**3.** In its petition to this court, Hillside seeks the abandonment of that order because it maintains that compliance has been achieved during the pendency of the appeal to this court. We conclude that the determination of whether Hillside has complied with the court of appeals' order is an issue of fact which must ultimately be determined by the trial court. Accordingly, we decline to rule on that issue.

App.2001). In a separate ruling, the court of appeals also upheld the award of attorney fees to Respondents under 42 U.S.C. § 1988. *Olson v. City of Golden,* No. 00CA0570, slip op. at 5 (Colo.App. Sept. 13, 2001).

Petitioners City of Golden and Hillside Community Church appealed the court of appeals' decisions to this court. We granted certiorari only with respect to the due process issue. We thus address the question of whether Respondents had a legitimate property interest either in their right to a special use hearing, or in their right to a denial of the special use permit, and hence a meritorious claim under 42 U.S.C. § 1983. We also granted certiorari in regard to the separate ruling affirming the award of attorney fees. We have combined those petitions in the present proceeding, and now reverse.

## II. PROCEDURAL DUE PROCESS RIGHTS

■ In bringing a due process claim under 42 U.S.C. § 1983, a plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). That Golden was acting under color of state law in this case is undisputed. Respondents' claim instead centers on the second *Parratt* prong; specifically, that they were deprived of property without due process of law.

■ In evaluating a due process claim, a court must consider:

(a) whether a property right has been identified; (b) whether governmental action with respect to that property right amounts to a deprivation; and (c) whether the deprivation, if one be found, was visited upon the plaintiff without due process of law.

*Fusco v. Connecticut,* 815 F.2d 201, 205 (2d Cir.1987); *accord Double I Ltd. P'ship v. Plan and Zoning Comm'n,* 218 Conn. 65, 588 A.2d 624 (1991). Because we conclude that Respondents have no property right at issue

in this case, our analysis will center primarily on the first factor listed in *Fusco*—the identification of a property right.

Since we have not before considered whether state law procedural protections create a cognizable property right in the land use context, we preface our analysis with an overview of what types of property are protected under the due process clause, and how those rights are ascertained.

■ The Fourteenth Amendment mandates that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. The definition of what type of property is safeguarded by the Fourteenth Amendment has evolved over the years to encompass not only tangible physical property, but a "legitimate claim of entitlement" to certain circumscribed benefits. *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The identification and parameters of those benefits, and what constitutes a "legitimate claim of entitlement" to them, however, is determined not by the Constitution, but largely by state law. *Id.* Once the state has legislatively created a certain entitlement and a person can demonstrate a legitimate claim to that entitlement, only then is the Fourteenth Amendment implicated to ensure that the person is not deprived of her entitlement absent due process of law. In short, "legislatures create property and courts protect it." Peter N. Simon, *Liberty and Property in the Supreme Court: A Defense of Roth and Perry,* 71 Calif. L.Rev. 146, 146 (1983).

Having thus established a basis in how constitutionally protected property is created and identified, we now turn to the question of whether a property interest has been established in this case. The court of appeals determined that Respondents had a property interest in the procedures set forth in the GMC because they had a legitimate claim of entitlement to (1) notice of, and an opportunity to participate in, the special review hearing for the Hillside addition; and (2) denial of the special use permit for the Hillside

addition.[4]  We will discuss these two potential property interests in turn.

## A. Notice and Opportunity to Participate in a Special Use Permit Hearing

The court of appeals held that Respondents had a "legitimate claim of entitlement arising from the GMC, which requires Hillside to obtain a special use permit." *Olson v. Hillside Cmty. Church,* 42 P.3d 52, 55 (Colo. App.2001). Respondents more specifically claimed that their due process rights were infringed by Petitioners' violation of sections 18.30.020(4), 18.30.020(6), and 18.30.020(7) of the GMC. Those sections require, respectively: (1) that upon receipt of a special use permit application, the Planning and Development Department shall notify all adjacent property owners of the filing, inform them of the date, time, and location of the permit hearing, and advise them that they can inspect the application prior to the hearing; (2) that the property shall be posted, and a notice of the hearing published in a newspaper of general circulation at least twelve days prior to the hearing; and (3) that the Planning Commission shall hold a public hearing on the permit, and shall subsequently make a determination of approval, approval with limitations or conditions, or denial of the special use permit. GMC §§ 18.30.020(4),(6), and (7) (1996).

These code sections set out the specific procedures that must be followed pursuant to a special use permit review; hence, the essence of the court of appeals' holding is that Respondents have a property interest in these procedures.[5]  This holding cannot stand. Although the precise issue has never been addressed by this court, the United States Supreme Court and a significant body of case law from other jurisdictions have conclusively established that there can be no property right in mere procedure.

The point is straightforward: the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology. "Property" cannot be defined by the procedures provided for its deprivation any more than can life or liberty. The right to due process "is conferred, not by legislative grace, but by constitutional guarantee."

*Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (citing *Arnett v. Kennedy,* 416 U.S. 134, 167, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (Powell, J., concurring in part and concurring in result in part)). *See also Olim v. Wakinekona,* 461 U.S. 238, 251 n. 12, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) ("an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause."); *Montgomery v. Carter County,* 226 F.3d 758, 768 (6th Cir.2000) ("What the Due Process clauses of the Fifth and Fourteenth Amendments protects is 'life, liberty [and] property,' not the procedures designed to protect life, liberty and property."); *Jacobs, Visconsi & Jacobs, Co. v. City of Law-*

---

4. In their brief to this court, Respondents also claim appeal rights to Golden's City Council under Section 18.30.040 of the GMC and to subsequent judicial review under Section 18.30.050 of the GMC. Because the special use permit hearing failed to occur, Respondents' right to appeal that decision to the City Council was subsumed by their subsequent filing in district court. In any event, the right to appeal to the City Council, like the right to notice and participate in the hearing itself, is purely procedural, and does not give rise to due process protection. *See Fusco v. Connecticut,* 815 F.2d 201, 205–206 (2d Cir.1987)("The opportunity granted abutting landowners ... to appeal decisions of planning and zoning commissions and zoning boards of appeal is purely procedural and does not give rise to an independent interest protected by the fourteenth amend-

ment.") (citations omitted). As for the right to subsequent judicial review under Section 18.30.050, Respondents have clearly availed themselves of that right in the present proceeding.

5. Petitioners argue that because these provisions of the GMC are only triggered when a special use permit application is filed, and because no such application was ever filed in this case, these code sections are simply inapposite to the present discussion. Because the court of appeals held that Respondents had a cognizable property interest in these procedures notwithstanding the absence of an actual application, however, we must analyze this issue accordingly.

*rence,* 927 F.2d 1111, 1117 (10th Cir.1991) ("The Supreme Court has recognized that the mere existence of an entitlement to a hearing under state law, without further substantive limitation, does not give rise to an independent substantive liberty interest protected by the fourteenth amendment."); *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 58 (2d Cir.1985) ("the mere existence of reasonable procedures entitling a person to a hearing under state law does not give rise to an independent substantive liberty interest protected by the Fourteenth Amendment."); *Slotnick v. Staviskey,* 560 F.2d 31, 34 (1st Cir.1977), ("The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension."); *Double I Ltd. P'Ship v. Plan and Zoning Comm'n,* 218 Conn. 65, 588 A.2d 624, 631 (1991) (citing *Cain v. Larson,* 879 F.2d 1424, 1426 (7th Cir.1989)) ("A party seeking to demonstrate a property interest entitled to protection under the due process clause cannot 'simply rely upon the procedural guarantees of state law or local ordinance.' ").

We find distinguishable the sole case cited by the court of appeals to support its conclusion that "[s]tatutes or regulations can create a legitimate property interest." *Olson v. Hillside Cmty. Church,* 42 P.3d 52, 55 (Colo. App.2001). In *Painter v. Shalala,* 97 F.3d 1351 (10th Cir.1996), the court rejected a doctor's claim that he had a protected property interest in receiving Medicare reimbursements calculated in a particular way. The court indicated in dicta that although the doctor may have had a legitimate property interest under the Medicare statute for reimbursement of medical services already rendered, he had no such interest in the procedure by which those reimbursements were calculated. *Id.* at 1357–58.

From this reasoning, the court of appeals erroneously concluded that *Painter* stood for the proposition that a statute itself could confer a property right. This misconstrues the court's logic. Instead, the Tenth Circuit held that a doctor has a property right in his preexisting entitlement to payment of services already rendered, not the enforcement of the Medicare statute per se. Accordingly,

we interpret *Painter* consistently with the line of cases cited above.

Respondents nevertheless argue that their case is distinguishable from this body of law because Golden failed to follow its own procedures. Petitioner's failure to follow the procedural requirements of the GMC may have indeed contravened state law. A state procedural failure alone, however, does not create a violation of constitutional proportions. The crux of our examination is not compliance with or violation of the prescribed procedure; rather, it is determining whether Respondents had a preexisting entitlement which gives rise to constitutional due process guarantees, an inquiry we answer in the negative.

■ Accordingly, we hold that Respondents did not have a cognizable property interest in their claimed right to notice of, and opportunity to participate in, a special use permit hearing for the Hillside addition. The violations of the GMC that Respondents claim were properly pursued under state law remedies pursuant to C.R.C.P. 106(a)(2), and do not rise to the level of procedural due process claims under 42 U.S.C. § 1983.

### B. No Property Interest in Denial of a Special Use Permit Due to the Discretion of the Decision Maker

We now turn to Respondents' claim that they had a property interest in the denial of the special use permit for the Hillside addition. The court of appeals generally concluded that the GMC provisions were not discretionary, *Olson v. Hillside Cmty. Church,* 42 P.3d 52, 55 (Colo.App.2001), thereby suggesting that had the special use permit hearing been held, the Planning Commission would have been obligated to deny Hillside's special use permit. We disagree.

■ Whether a property interest exists in the outcome of a particular zoning board decision depends not on the probability of a favorable result, but on the degree of discretion vested in the decision-maker. *Hyde Park Co. v. Santa Fe City Council,* 226 F.3d 1207, 1210 (10th Cir.2000). Thus, in order to prove a property interest in the denial of the special use permit, Respondents must show that, had it held the hearing, the Golden Planning

Commission was obligated to deny the special use permit. Our analysis concludes that Golden, had it held the hearing, would not have been obligated to deny the special use permit, and hence Respondents have no legitimate claim of entitlement to a denial.

Like the right to certain procedures, the right to certain outcomes has been extensively litigated in the land use context, albeit usually in regard to the failure of a zoning department to *grant* a permit or license.[6] The Tenth Circuit Court of Appeals has described the test for determining the existence of a protected property interest:

> If the decisionmaker is granted a broad range of discretion, the applicant is seeking neither an interest that he or she has already acquired nor a claim upon which he or she should rely, regardless of the characterization of the process involved.

*Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence,* 927 F.2d 1111, 1117 (10th Cir. 1991); *see also Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 59 (2d Cir.1985) ("the question of whether an applicant has a legitimate claim of entitlement to the issuance of a license or certificate should depend on whether, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted.").

Applying the "discretion of the decisionmaker" analysis to the facts of this case, we now turn to the provisions of the GMC in order to determine how much (if any) discretion the Golden Planning Commission would have had in deciding whether to grant or deny Hillside's special use permit. Section 18.30(7) of the GMC provides as follows: "The Planning Commission shall hold a public hearing on the special use permit application, and upon conclusion of the public hearing, make a determination of *approval, approval with limitations or conditions, or denial of the special use permit.*" GMC § 18.30(7) (1996) (emphasis added). This language clearly indicates that the Planning Commission has significant-if not unlimited-discretion to rule on a special use permit

application in whatever manner it deems appropriate.

On the other hand, section 18.30.020(5) lists a number of factors the Planning Commission should consider in deciding whether to grant a permit, and arguably limits that body's discretion by mandating that "[s]pecial use permits *shall be granted only if* the usage will not authorize or require any construction or alteration in violation of any ordinances of the city, including the planning and zoning ordinance and the city building code." GMC § 18.30.020(5) (1996) (emphasis added). Given that the trial court noted some twelve specific code and ordinance violations, there is some merit to Respondents' contention that they had a "certainty or very strong likelihood" that the special use permit would have been denied. *Cf. Polenz v. Parrott,* 883 F.2d 551, 556 (7th Cir.1989) ("where a municipal ordinance provides substantive criteria which, if met, dictate the issuance of a permit, an applicant who has met those criteria might assert a legitimate claim of entitlement to the permit.").

The GMC is ambiguous with respect to which code section was intended to prevail over the other. Specifically, the question is whether section 18.30(7) prevails over section 18.30(5), or vice-versa. Given the use of the mandatory language in section 18.30(5) ("special use permits shall be granted only if" GMC and building code provisions are complied with), coupled with its list of provisions the Planning Commission "shall" consider, this section could arguably be considered to control over the language of 18.30(7). In other words, the Planning Commission might only have the discretion to grant the permit under 18.30(7) if the project was otherwise in compliance.

We find, however, that section 18.30(7), with its expansive discretionary language, was intended to vest the Planning Commission with the broad degree of flexibility necessary to individually tailor project requirements to particular circumstances, even to the extent of negating the directives of section 18.30(5). Indeed, the special permit pro-

---

**6.** This distinction is of no consequence to our analysis. Whether a litigant claims a protected property interest with regard to the granting of a

permit or its denial are simply opposite sides of the same argument.

cess itself has been recognized by other courts as largely discretionary in nature. *See, e.g., Irwin v. Planning and Zoning Comm'n,* 244 Conn. 619, 711 A.2d 675, 678–79 (1998) ("We previously have recognized that the special permit process is, in fact, discretionary.... 'If the special permit process were purely ministerial there would be no need to mandate a public hearing.' ") (citing *Conn. Health Facilities, Inc. v. Zoning Bd. of Appeals,* 29 Conn.App. 1, 613 A.2d 1358, 1362 (1992)).

Moreover, section 18.30.040 vests the City Council with the power, upon appeal by either an applicant or person to whom notice is required, to "uphold, deny, or modify the decision of the Planning Commission." [7] GMC § 18.30.040 (1996). Section 18.30.040, therefore, creates a wholly separate, yet equally expansive, grant of discretionary power to the City Council. This lends support to our conclusion that sections 18.30(7) and 18.30.040, granting discretion to the Planning Commission and the City Council, respectively, were intended to prevail over section 18.30(5). By vesting discretionary power in these two bodies by the plain language of the code, Golden expressly declined to tie its own hands with respect to the denial of a special use permit.

■ Because the plain language of two separate sections of the GMC vests broad decision-making powers in both the Planning Commission and City Council to either grant or deny a special use permit, we conclude that had the special use permit hearing been held, Respondents would have had no certainty that Hillside's special use permit application would have been denied. Accordingly, Respondents could have had no preexisting claim of entitlement to the denial of the special use permit.

In summary, we conclude that: (1) Respondents' right to notice of, and an opportunity to participate in, the special use permit hearing was solely a procedural claim and as such lacked the requisite property entitlement necessary for the successful assertion of a due process claim; and (2) both the Planning Commission and the City Council had discretion whether to grant or deny the permit, thus negating Respondents' claimed entitlement to the denial of the special use permit. Accordingly, we hold that Respondents have no cognizable property interest in the right to notice of, and participation in, the special use hearing, nor in the denial of the special use permit to Hillside.

### III. Adequacy of State Law Remedy

Finally, Respondents assert that because Golden's failure to follow the special use permit procedures mandated by the GMC was a deliberate and intentional decision, made jointly by the Planning and Zoning Commission, the City Council, and the City Attorney, as opposed to a "random and unauthorized" act by a single governmental official, the post-deprivation remedy afforded them by C.R.C.P. 106(a)(2) was inadequate. They claim that in such circumstances, only a pre-deprivation remedy is legally sufficient to protect a claimant's due process rights, a remedy they were denied.[8]

The United States Supreme Court articulated the distinction upon which Respondents rely in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In *Parratt,* the Court rejected a prisoner's claimed violation of his procedural due process rights pursuant to § 1983 when prison officials lost

---

7. This section reads as follows:

   **Council review.** The applicant and any person to whom notice is required, pursuant to paragraph 18.30.020(3) above, aggrieved by the decision of the Planning Commission on any special use permit, may, within 15 days of the date of the decision thereon, apply to the City Council for review of said decision by filing a request for review with the City Clerk. The City Council shall within 30 days of receipt of the review request, based on the record alone as certified to the Council by the Planning Commission, decide to uphold, deny, or modify the decision of the Planning Commission.

8. We first emphasize that we need not reach the merits of this claim. As we explain, the argument that Respondents advance is relevant only when a cognizable property interest hangs in the balance. Because we have found no such property interest at issue in this case, Respondents' argument is essentially mooted at the outset. We address it to the extent we do, however, only to clarify our holding that Respondents had an adequate remedy under state law.

the prisoner's mail-ordered hobby kit due to their failure to follow proper procedures regarding the distribution of prison mail. The Court reasoned that had the loss been the direct result of an "established state procedure," the prisoner would have had a cognizable due process claim which could be adequately addressed only by a pre-deprivation remedy. *Id.* at 538, 101 S.Ct. 1908. Since the failure was instead the result of a "random and unauthorized" act taken by prison officials, however, and because such an act could not have been reasonably predicted prior to its occurrence, the Court held that a post-deprivation remedy was constitutionally sufficient in these circumstances. *Id.* at 541, 101 S.Ct. 1908. It therefore concluded that a state statute providing redress when officials failed to follow state procedures provided an adequate remedy, and the prisoner's due process rights were accordingly not violated. *Id.*

Respondents' assertion that the failure to follow the dictates of the GMC was an intentional and deliberate decision made by the Planning Commission, City Council, and City Attorney, as opposed to a "random and unauthorized" act by an isolated official, is unsupported by the record. Indeed, the argument is belied by the fact that it was the City Attorney himself who later acknowledged that the failure to hold a special use permit hearing was in error.

Even were we to agree with Respondents' claims that the failure to follow the mandates of the GMC was a deliberate decision made by the entirety of the Golden city government, however, we still could not find a violation of Respondents' due process rights requiring a pre-deprivation remedy. This is because, as we indicated earlier, a necessary prerequisite to the *Parratt* distinction is the existence of cognizable property right at issue. In *Parratt,* the prisoner's hobby kit was clearly property; a preexisting right to that property was simply assumed. Here, however, for the reasons we have articulated in Part II of this opinion, Respondents have identified no cognizable property interest to which their claim for a pre-deprivation remedy can attach. Their reliance on the *Parratt* distinction accordingly fails.

■ We therefore conclude that Respondents had an adequate remedy for their claims under state law, and no basis upon which to seek recourse under § 1983. Section 18.30.050 of the GMC allows any person "adversely affected or aggrieved" by any city action to seek judicial review pursuant to C.R.C.P. 106(a)(4). Respondents successfully sued under that provision, and under C.R.C.P. 106(a)(2) for a writ of mandamus, achieving injunctive relief in the trial court that was not only upheld on appeal, but enhanced by the court of appeals' rejection of the relative hardship doctrine and their order to Hillside to modify its addition to bring it into compliance with the code. These state law remedies were all the process that was due, and Respondents therefore have no recourse to a § 1983 claim. *See, e.g., River Park, Inc. v. City of Highland Park,* 23 F.3d 164, 166–67 (7th Cir.1994) ("the Constitution does not require state and local governments to adhere to their procedural promises. Failure to implement state law violates that state law, not the Constitution."); *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 58–59 ("even an outright violation of state law ... will not necessarily provide the basis for a federal claim, at least when the applicant has a state law remedy."); *Chesterfield Dev. Corp. v. City of Chesterfield,* 963 F.2d 1102, 1104–05 (8th Cir.1992):

> It is not enough simply to give these state law claims constitutional labels such as "due process" or "equal protection" in order to raise a substantial federal question under section 1983 .... we have unequivocally held that a state-law error, no matter how fundamental, cannot in and of itself create a federal due-process violation.

Therefore, we hold that although the City of Golden may indeed have violated the provisions of the GMC, Respondents had an adequate state law remedy under section 18.30.050 of the GMC allowing for a writ of mandamus, and under C.R.C.P. 106(a)(2) which provides for judicial review of governmental decisions.

## IV. CONCLUSION

We conclude that Respondents have no cognizable property interest with respect to

(1) notice of, and an opportunity to participate in Hillside's special use permit hearing, or (2) the denial of the special use permit to Hillside. Respondents therefore cannot successfully assert a § 1983 claim against the City of Golden. Accordingly, we also reverse the court of appeals' opinion allowing the payment of reasonable attorney's fees under 42 U.S.C. § 1988. We conclude that Respondents received an adequate remedy under state law, and were not deprived of their right to be heard. We therefore reverse the court of appeals' holding that Respondents procedural due process rights were violated, and remand to the trial court for the determination of whether Hillside adequately complied with all other orders issued by the court of appeals.