Questions Presented and Conclusions
Question 1: If the Arapahoe County Clerk and Recorder's certification of urban motor vehicle registrations for calendar year 2001 contained an error for the City of Centennial, does the County Clerk and Recorder have the legal obligation and authority to prepare a corrected certification?
Answer: Yes
Question 2: If the County Clerk and Recorder provides a corrected certification of urban motor vehicle registrations for Centennial, does the Department of Revenue have the legal obligation and authority to accept the new certification, and, in turn, to certify the correct figure to the State Treasurer?
Answer: Yes
Question 3: If the Department of Revenue provides a corrected certification of 2001 urban motor vehicle registration for Centennial to the State Treasurer, does the State
Treasurer have the legal obligation and authority to recalculate payments made for fiscal year 2002-2003?
Answer: Yes
Question 4: Must the State Treasurer adjust the incorrect payments in the current fiscal year, or may the Treasurer adjust the incorrect payments in the next fiscal year?
Answer: There is no statutory provision concerning how an error is to be corrected, including no requirement that adjustments be made in the current fiscal year. Therefore, the Treasurer may adjust the incorrect payments in any reasonable manner.
Background
The Highways Users Tax Fund and the distribution of money to cities. The Highways Users Tax Fund is created in Part 2 of article 4 of title 43, C.R.S. (2002) ("HUTF" or "the statute"). The fund contains revenues from excise taxes on motor fuel; annual registration fees on drivers, motor vehicles, trailers, and semitrailers; and passenger-mile taxes on vehicles or any fee or payment substituted therefor. § 43-4-203, C.R.S. (2002). Miscellaneous other revenues are also credited to the fund, including certain fines, penalties, and forfeitures resulting from traffic violations, as well as certain sales and use taxes. §§ 39-26-123
and 42-1-217, C.R.S. (2002).
The General Assembly has directed that the money in HUTF is to be divided among State agencies and Colorado's counties, cities, and incorporated towns. § 43-4-205, C.R.S. (2002). This money is to be spent generally upon law enforcement and highway, bridge and road construction, improvement, and maintenance. § 43-4-206, et seq., C.R.S. (2002). See also Colo. Const., Art. 10, § 18 (all revenues derived from the operation of motor vehicles on the State's highways and from taxes on motor fuel must be used exclusively for highway-related purposes).
This opinion focuses upon the distribution of HUTF money to cities. The statute contains formulas to be used to determine the distribution of funds. Distributions to the cities are based on two factors: (1) "the mileage of open, used, and maintained streets in each city"; and (2) the number of motor vehicle registrations issued to residents of the cities in the previous calendar year. § 43-4-208, C.R.S. (2002) (urban motor vehicle registrations).
This opinion concerns the HUTF distributions to the City of Centennial for fiscal year 2002-2003. It focuses upon the number of urban motor vehicle registrations for calendar year 2002 in Centennial. An error apparently was made in the compilation of those registrations. This opinion concludes that the error must be fixed, if it indeed occurred, and addresses how that correction is to be made.
Under the HUTF statute, for each preceding calendar year, each county clerk and recorder must determine the number of motor vehicle licenses issued to people residing in each city within the county.[1] §43-4-208(4), C.R.S. (2002). The Clerk then certifies this number to the Department of Revenue. The Department of Revenue applies a statutory factor to determine an adjusted urban motor vehicle registration number, and calculates further to arrive ultimately at a percentage of adjusted urban motor vehicle registrations for each city. By May 1 of each year, the Department of Revenue certifies these urban motor vehicle registration figures for each city to the State Treasurer. The Treasurer then uses these figures to distribute HUTF funds monthly to Colorado cities, as provided in § 43-4-205.
In practice, this statutory mandate is carried out as follows. Throughout the year, the offices of the county clerks record all motor vehicle registrations they issue in an automated system, which determines whether the applicant resides in a city ("urban motor vehicle registration") or in an unincorporated county ("rural motor vehicle registration"). At the beginning of the next calendar year, the Department of Revenue uses this database to create a form for each county. The form is called the "Urban and Rural Registrations" form. The form contains a list of the cities in the county and the number of urban motor vehicle registrations reported in each city for the preceding calendar year.
The form requires the county clerk to verify the numbers it contains and to certify their accuracy by signing the form. The Department of Revenue then carries out required statutory calculations and certifies the urban motor vehicle registration figures to the Treasurer. The Treasurer uses these figures to distribute HUTF money monthly to the individual cities for the ensuing fiscal year.
The error in the distribution to Centennial for the 2002-2003 fiscal year. The City of Centennial was incorporated in February, 2001. In early 2002, the Department of Revenue created the "Urban and Rural Registrations — 2001" form for Arapahoe County. The form sent to Arapahoe County did not list Centennial as one of the cities in the county, and did not contain any motor vehicle registration numbers for that city. This was an error.
Arapahoe County returned the form to the Department of Revenue with the county clerk's signature and handwritten notations.[2] The name "Centennial" was handwritten along with the number "47, 944" in the column for urban motor vehicle registrations. The Department of Revenue certified this number to the Treasurer, who used it to make the monthly distributions of HUTF funds for fiscal year 2002-2003.
The City of Centennial tells the Attorney General that the number "47,944" for its calendar year 2001 motor vehicle registrations is erroneous, and that the actual figure is as much as twice that number. It points to motor vehicle registrations for 2002 to support its claim.[3]
This opinion is based upon an assumption — for purposes of this opinion only — that Centennial's belief is correct, and that a different number for 2001 can and will be properly verified in the records of the Arapahoe County Clerk and Recorder or otherwise.
Analysis
The Department of Local Affairs asks whether these errors must be corrected. I conclude the errors must be fixed. The Department of Local Affairs also asks about the timing of the correction by the Treasurer's office. I conclude that the Treasurer must correct the errors in a reasonable time.
Statutory grants of administrative authority. A legal principle important to the issues here is that the authority of administrative agencies and officials is limited to that granted by law. A related principle is that some statutory grants of power to administrative entities are mandatory, without discretion to choose to act differently.
In general, the authority of government agencies and officials to act is limited to that provided in controlling law, whether by constitution, statute, or rule. See, e.g., Adams v. Colo. Dept. of Social Services,824 P.2d 83, 86 (Colo.App. 1991), cert. denied (1992) ("Administrative agencies are legally bound to comply strictly with their enabling statutes."). See also Matter of Death of Peterkin, 698 P.2d 1353, 1355
(Colo.App. 1985), aff'd 729 P.2d 977 (Colo. 1986) (Administrative "powers and authority . . . are derived solely from statute and . . . cannot be waived, enlarged, diminished, or destroyed by consent, and cannot be estopped.").[4] Even an order from a court cannot authorize action that varies from that conferred by the authorizing law. Industrial Comm'n v. Plains Utility Co., 127 Colo. 506, 259 P.2d 282 (1953). Thus the validity of an administrative action is judged by its conformity with the controlling statute.
Duties imposed by law on government agencies and officials are broadly divided into two categories: actions that are mandatory in nature and those that are discretionary. If the statute is permissive and allows the use of judgment and a choice among alternatives, the duty is characterized as discretionary. People v. Triantos, 55 P.3d 131, 134
(Colo. 2002); Hillside Community Church v. Olson, 58 P.3d 1021, 1028-29
(Colo. 2002), cert. denied, 123 S.Ct. 2091 (2003). Discretionary commands by the General Assembly are often given using the word "may" to describe the action.
If the statute is mandatory and directs that the action occur without the exercise of judgment or discretion, it is a ministerial action. Brooks v. Jackson, 813 P.2d 847, 849 (Colo.App. 1991). The statutory command is often given using the word "shall." See also Boselli Investments, LLC v. Division of Employment, 975 P.2d 204, 206 (Colo.App. 1999) (When a statute uses the term "shall," the legislature "intended the statutory directive to be mandatory."). In this instance, the agency or official has no choice but to act as required by the commands of the statute.
Examining the HUTF statute with these principles in mind leads to the following conclusions. The involved administrative entities must follow the statutory provisions concerning the allocation and distribution of HUTF funds to cities. Pursuant to the statute, the actions of the county clerks and the Department of Revenue in certifying motor vehicle registration numbers for cities are ministerial acts that involve no discretion or judgment. The same is true of the actions of the Treasurer in distributing HUTF funds to the cities monthly.
For instance, the statute declares that HUTF moneys "shall be allocated to the cities and incorporated towns in proportion to the adjusted urban motor vehicle registration in each city and incorporated town." [emphasis added.] § 43-4-208(2)(a), C.R.S. (2002). The word "shall" appears throughout the statute regarding the allocations to municipalities:
 The county clerk and recorder in each county shall certify to the department of revenue the number of motor vehicle licenses issued during the preceding calendar year to persons residing within the limits of each city and incorporated town within the county. Upon receipt of this information certified by the respective county clerks and recorders, the department of revenue shall tabulate the total number of all motor vehicle licenses issued during the preceding calendar year to persons residing within the limits of the respective cities and incorporated towns in the entire state. The department of revenue shall apply the factor provided in subsection (2)(a) of this section by registration groupings to the urban motor vehicle registration of each city and incorporated town to determine an adjusted urban motor vehicle registration and shall then determine the percentage that the urban motor vehicle registration in each city and incorporated town bears to the total adjusted urban motor vehicle registration in the entire state. On or before May 1 of each year, the department of revenue shall certify to the state treasurer the percentage of adjusted urban motor vehicle registration for each city and incorporated town as provided in this subsection (4).
§ 43-4-208(4) [emphases added.]; see also § 43-4-208(6) (use of "shall" throughout). I conclude the statutory duties of the administrative agencies and officials involved in this allocation are mandatory and ministerial.
Statutory entitlements. Statutes that award benefits must be followed precisely. This is true even if an agency or official provides incorrect information about the entitlement.
 [B]eing given incorrect information concerning such matters [does] not provide a basis for awarding benefits contrary to the statutory provisions. We must give effect to the statutory requirements . . . as written.
Boeheim v. Industrial Claim Appeals Office, 23 P.3d 1247, 1249
(Colo.App. 2001). Thus, if errors are made in conferring benefits, and barring any statutory provision to the contrary, there is an implied authority and command to take actions necessary to correct the errors. See Jiminez v. Industrial Claim Appeals Office, 51 P.3d 1090, 1092
(Colo.App. 2002) (retroactive offset in statutory benefits "merely adjusts the amount of benefits to accurately reflect the amount to which a claimant is actually entitled").
Moreover, it is significant that Centennial's entitlement to its proportionate share of HUTF funds is specified in the HUTF statute. In Colorado Dep't of Social Services v. Board of County Comm'rs of the County of Pueblo, 697 P.2d 1 (Colo. 1985), the court considered whether the State was obliged to comply with statutory language requiring it to supplement county public assistance funds under certain circumstances. The court focused upon a change to the statute and said, "By replacing the word `may' with `shall,' the General Assembly indicated an intent to make mandatory the advancement of funds to qualifying counties." Id. at 22. The court further explained:
 Where a statute leaves the funding of a program to the General Assembly's discretion, obviously a court may not transform what is discretionary into a mandate. Here, however, the language is mandatory, not discretionary. We thus conclude, as did the trial court, that the statute requires sufficient funding of the county contingency fund to fulfill the justifiable claims of counties eligible for such assistance.
Id. at 23. But see Romer v. Board of County Comm'rs of County of Pueblo,956 P.2d 566, 570 (Colo. 1998) (General Assembly subsequently amended this statute to make its duty discretionary), as modified on denial of reh'g (1998). Thus, compliance with Centennial's distribution allocation is mandatory, as well.
Application of this analysis leads to the conclusion that Centennial has a statutory entitlement to its proportionate share of HUTF funds. The HUTF law is replete with use of the word "shall," and is obviously mandatory. Centennial meets statutory eligibility requirements. As a duly incorporated city, Centennial is entitled to its proportionate share of HUTF moneys for the 2002-2003 fiscal year. The statute says:
 Future municipalities eligible. In cases of cities and towns incorporated subsequent to January 1, 1954, said cities and towns are entitled to such proportionate share of the highway users tax fund, subject to the same provisions and limitations as cities and incorporated towns included in the provisions of this part 2 before said date.
§ 43-4-214, C.R.S. (2002). See also Western Refining Corp. v. State Dept. of Revenue, 767 P.2d 772, 775 (Colo.App. 1988), cert. denied (1989) ("The statute sets forth the General Assembly's intent to establish [the entitlement] and the conditions which must be met to qualify . . . for that benefit with clarity."). And, using the same reasoning, the recipients of those funds to which Centennial was entitled by statute have no legal right to retain them.
The law provides no discretion to administrators with regard to the determination of entitlement to HUTF funds. Thus, the criteria for the creation of a statutory entitlement for Centennial, as specified in the Colorado Dep't of Social Services case, are met.
Correction of the administrative error. The HUTF statute provides no direction concerning how administrative errors of the type that occurred here are to be corrected. Though some provisions do contemplate specific problems and supply methods to correct them, the situations they address are factually unlike the circumstances presented herein.[5] More particularly, the HUTF statute contains no requirement that correction of the error concerning Centennial be made within the current fiscal year.
Agencies are, of course, required to act in a reasonable way, and may take actions necessary to carry out their statutory functions, "if the implied power is exercised in a reasonable manner." Denver Local 2-477, Oil, Chemical Atomic Workers' International Union v. Metro Wastewater Reclamation Dist., 7 P.3d 1042,1046 (Colo.App. 1999), cert. denied (2000). Therefore, officials must utilize their best judgment as to how to rectify the error, probably by offsetting some recipients' future monthly distributions, and augmenting those of Centennial. While the correction should be done reasonably promptly, it would be reasonable to attempt to minimize the effects thereof by spreading the offset over some period of time.
Conclusion
The county clerk and the Department of Revenue are statutorily required to perform the ministerial acts of certifying the correct motor vehicle registration figures for the City of Centennial. The Treasurer is required to use the correct figures to distribute the HUTF funds each month. Centennial has a statutory entitlement to the HUTF moneys that the law provides it should receive, and the entities which may have received more HUTF funds than they were entitled to have no legal right to retain those funds. Upon verification of the correct figures, the officials and agencies involved must make necessary corrections in a reasonable way.
Issued this 30th day of June, 2003.
[1] Pursuant to § 42-1-210, C.R.S. (2002), the county clerk and recorder is designated to serve as the authorized agent of the Department of Revenue for various statutory functions associated with motor vehicle registration in that county.
[2] There is some question as to exactly how this occurred. That concern is not material to this opinion.
[3] The urban motor vehicle registration number for Centennial for calendar year 2002 is 98,695.
[4] This limitation on administrative authority applies with particular force to counties. See Bd. of County Comm'rs v. Pfeifer, 190 Colo. 275,278, 546 P.2d 946, 947 (1976), where the Colorado Supreme Court reiterated the "well-established principle of law" that courts are compelled to construe the powers of county entities and officials narrowly.
[5] For instance, § 43-4-209 provides that the State Treasurer may "withhold" HUTF moneys from cities or incorporated towns for a period not to exceed six months, and must thereafter credit the funds to the county for use on the city's streets if "the municipality has failed to correct the reason for the withholding." In this instance, there was no deliberate or intentional withholding of funds by the Treasurer, or any notice to Centennial that it needed to make any "correction." Therefore, this provision is inapplicable to the questions presented here.
Similarly, § 43-4-211 concerns a procedure to estimate municipal allocations when the number of registered vehicles is "not available" before the Treasurer makes the statutory apportionment. In that circumstance, the Treasurer is authorized to estimate the amount to be paid and must notify the city clerk that an estimate is being made; if the city subsequently fails to provide the information, the funds are forfeited and returned to the fund to be reapportioned during the ensuing year in the manner provided in the statute. Again, in the circumstances at issue here, there was no understanding that the number was unavailable, no estimate was made by the Treasurer, and there was no notice to the city clerk, so this statutory provision is also inapplicable.