No. 13,821.

PEOPLE FOR THE USE OF SCHOOL DISTRICT No. 6, CONEJOS COUNTY *v.* SCHAEFFER ET AL.
(65 P. [2d] 699)

Decided February 15, 1937.

Mr. WILLIAM J. CHRISTENSEN, for plaintiff in error.

Mr. RALPH L. CARR, Mr. JEAN S. BREITENSTEIN, Mr. JOHN G. REID, for defendants in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

PLAINTIFF in error was the plaintiff and defendants in error were defendants, so we will speak of the respective parties as they were described in the lower court.

Plaintiff, a school district, brought this action to recover damages from two treasurers of Conejos county and their surety for an alleged breach of duty by such treasurers. To the amended complaint separate general demurrers were interposed by each of the defendants, which were sustained by the lower court. The case is before us on several assignments of error made by the plaintiff.

For the purpose of this opinion the court will accept the plaintiff's statement of substance of his assignments of error, which is summed up in the following interrogatory: "Do the facts alleged in the amended complaint show an improper payment from the relator's special

72

bond redemption fund and omissions to report thereon and account therefor by the defendant county treasurers, to the loss to the relator?'' The two important words in this interrogatory are ''improper payment.''

The facts, as they appear from the pleadings and in so far as they are pertinent to this inquiry, are substantially as follows: The plaintiff school district on July 15, 1913, issued and sold bonds in the amount of $4,900, and on November 1, 1913, $4,900 worth more, making a total of $9,800 worth of bonds. On May 15, 1926, relator, school district No. 6, issued and sold refunding bonds in the amount of $9,800 for the purpose of refunding the bonds issued originally in 1913. Said $9,800 was paid to one Reginaldo Garcia, the then county treasurer of Conejos county. Thereafter, in 1926, certain bonds issued in 1913 were paid by Garcia as county treasurer, but it appears that part of this money, namely, $1,203, was used to pay interest coupons on bonds of the 1913 issue which were still outstanding, and it is the alleged negligent, unlawful and unauthorized payment of the interest coupons of the 1913 bond issue after the alleged call for their redemption had been made and the consequent injury to the credit of the plaintiff school district that is here complained of.

In our opinion this entire litigation hinges upon whether or not the call for the redemption of the 1913 bonds was sufficient. If the call was insufficient the 1913 bondholders had a right to demand and receive their interest in accordance with the provisions of the bonds they held. To determine the legality of the notice of the call it becomes important for us to determine whether or not the publication was governed by section 8801, C. L. 1921, or section 8371, because it appears in the amended complaint that notice of call was published in accordance with section 8801, which reads as follows: ''It shall be the duty of the county treasurer of each county in this state, when there are sufficient funds to the credit of any school district, or to the credit of any school fund of any such

district, to pay in full the principal and interest of any orders which may be on such fund, in the order of their registration, and if at any time there shall be two hundred dollars in the hands of such treasurer, to the credit of any such fund, it shall be his duty to cause to be published in some newspaper published at the county seat of such county, for twenty days, a notice that certain school orders (describing same by numbers and amounts) will be paid upon presentation, and at the expiration of said twenty days' advertisement, such orders shall cease to bear interest.''

It will be noticed that this particular section has to do with orders, and that said section was a part of the law adopted in 1887, the title to which reads as follows: ''An Act to provide for the payment of school orders by the county treasurer, as soon as there is money on hand for the payment of the same.'' S. L. 87, p. 405. Counsel for the plaintiff contends that this language is broad enough to include ''bonds'' and that a notice published in accordance with the requirements of this section is sufficient notice for the call of the 1913 bonds.

With this contention we cannot agree, because section 8371 makes specific provision for publication of notice in connection with redemption of bonds such as constitute the subject matter of this action. While it is true that section 8371 is part of the act of 1919, that act is simply a reenactment of the 1909 act as far as the important provisions affecting this case are concerned, and section 8371 requires ''The treasurer of said school district, immediately after so receiving sufficient money therefor, shall advertise in some newspaper * * * once a week for four consecutive weeks,'' and it is nowhere contended that this requirement was complied with.

It has been the rule in this state since territorial days that statutes relating to publication of notice in legal proceedings must be strictly complied with. *Crary v. Barber,* 1 Colo. 172.

Notice by publication is the law's substitute for

74

personal notice. It is frequently called constructive notice, but to be effective as against any one whose rights are involved a compliance with, an allegation of, or a showing of strict compliance with the proper statute is essential to a good complaint.

The 1913 bondholders in this case, not having received notice as required, had a right to demand and receive their interest under the rule announced in the case of *Berkey v. County Commissioners,* 48 Colo. 104, at 118, 110 Pac. 197, and *Crater v. Logan High School District,* 64 Colo. 600, at 603, 173 Pac. 714. Counsel for plaintiff admits that section 8371 was enacted for the benefit of the bondholders. He does not say whether the 1926 or 1913 bondholders, but surely it was enacted for the benefit of both. In any event, the 1913 bondholders were entitled to such notice under said section 8371.

The 1926 refunding bonds by their terms provided that they were issued "for the purpose of redeeming and refunding a like amount of outstanding, unpaid, payable, lawful and *bonded indebtedness of said district."* The unpaid interest on the 1913 bonds was just as much a part of the bonded indebtedness of said district as the bonds themselves, and the defendant county treasurers in this case while acting carelessly, negligently and maybe unlawfully in a number of collateral matters were legally within their rights in paying the interest on the 1913 bonds.

Counsel for the plaintiff apparently agrees with the legal conclusion that bondholders have a right to interest if improper or no notice of call is made, but still insists that county treasurers could still be liable in this case, because of an alleged violation of section 8799, C. L. 1921, which provides that "it shall not be lawful to use the moneys belonging to any fund, for the purpose of paying warrants drawn or which properly should have been drawn upon some other fund; the treasurer, and the sureties on his official bond, shall be liable at the action

of any taxpayer of the county for any violation of this section.''

We have sufficiently pointed out that what the treasurers did in the instant case was not a violation of this section, nor was it a violation of that part of section 8371, C. L. 1921, which reads as follows: ''The county treasurer shall collect the same as other taxes are collected, in cash only, keeping the same separate from other funds received by him * * * Such money shall be used only in the payment and redemption of such bonds * * *.''

Our conclusion, therefore, is that the original and primary cause for all of the difficulties in which the plaintiff in this case finds itself is due largely to its officers' failure to comply with their statutory duty in publishing a notice which would toll the payment of interest on the 1913 bonds, and they cannot in this action ignore that failure and seek to place the responsibility upon other officers who may or may not have been derelict in some duty in this regard.

Part of the language used by this court in the case of *People v. Koenig,* 99 Colo. 456, 63 P. (2d) 1235, at page 459 can well be applied here. ''School districts and their boards are solely responsible for the creation of district debts, and the time, manner, and place of payment is of their uncontrolled action. * * * Only incidentally, if at all, does a county treasurer know of school district indebtedness and how or where it is to be paid. The credit of such an entity, important of course, as well as the burden of the ways and means of its protection, rests with itself and its board.''

Having concluded that the amended complaint shows on its face that the call for the redemption of the 1913 bonds was not in compliance with the applicable statute, it follows that said amended complaint was fatally defective in this regard and the sustaining of the general demurrer on this point was proper.

Now on the question of negligence, it is well

settled in this state that negligence on the part of the defendant will not authorize a recovery where it appears that the contributory negligence of the plaintiff was the proximate cause of the injury complained of. Nor does such negligence excuse the plaintiff from the exercise of due care. *Headley v. Denver & Rio Grande Railroad Co.*, 60 Colo. 500, 154 Pac. 731, and the degree or extent of defendant's negligence is immaterial unless it was the proximate cause of the injury complained of. *Union Pacific Railroad Co. v. Brower, et al.*, 60 Colo. 579, 155 Pac. 312.

As far as the liability of the defendant surety company is concerned all we need to say is that a discharge of the principal is a discharge of the surety.

Judgment of the lower court is therefore affirmed.

Mr. Chief Justice Burke and Mr. Justice Hilliard concur.