No. 18,762.

Holly Development, Inc. *v.* Board of County
Commissioners of Arapahoe County.
(342 P. [2d] 1032)

Decided July 27, 1959.   Rehearing denied August 24, 1959.

Mr. JOSEPH F. LITTLE, Mr. ROBERT H. KILEY, for plaintiffs in error.

Mr. J. SHERMAN BROWN, Mr. RICHARD N. GRAHAM, for defendant in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THIS writ of error is directed to a judgment in a certiorari proceeding in the trial court. The parties will be referred to as they appeared there, wherein plaintiffs in error were plaintiffs and defendant in error was defendant.

Plaintiffs petitioned the trial court to review the action of defendant in re-zoning twenty-five acres of land known as Charlou Park, Third Filing, in Arapahoe County, Colorado. Pursuant to order, defendant delivered to that court the record of proceedings before it pertaining to the re-zoning. Upon hearing, the trial court affirmed the action of defendant and denied the petition. This writ followed.

The record discloses that plaintiffs are Colorado corporations or residents, taxpayers of Arapahoe County, and owners of land in Charlou Park Addition and Charlou Park Second Addition located in the south half of section eight, township five south, range 67 west, Arapahoe County, Colorado.

It appears that in 1941 defendant adopted "The Arapahoe County Zoning Resolution" under authority of what was then C.S.A. '35, chapter 45 A (C.R.S. '53, 106-2-1, et seq.). This resolution was amended in 1950 and 1956. The unplatted areas of section eight are now zoned as an A-2 Farm Residence District, with a minimum of twenty acres per farm unit, and an A-1 Farm Residence District with a minimum area of two and a half acres per farm unit. Prior to November 12, 1957, plaintiffs' property was in the A-1 Farm Residence District. In 1955, defendant, upon request, refused to re-zone the area involved here from an A-1 Farm Residence District to an R Residence District, which requires a minimum of one acre per family. Defendant then stated that unless there was some decided change in the area the zoning would remain as then established.

Plaintiff Holly Development Inc. states that in reliance on the last action of defendant it purchased sixty acres of land in Charlou Park Second Addition and expended

approximately $275,000.00 in developing it, opening streets and providing water and natural gas. The record shows that individual plaintiffs, in reliance upon the zoning status as it existed prior to November 12, 1957, purchased building sites with the minimum required area of two and a half acres, and expended large sums of money in erecting buildings thereon as well as in landscaping.

On September 3, 1957, the Arapahoe County Planning Commission approved reducing minimum requirements for dwellings located in the twenty-five acres or more contained in Charlou Park, Third Filing, from two and a half acres to one and one-fourth acres, and recommended that defendant adopt the change. On November 12, 1957, defendant did adopt the recommendation and re-zoned the land in question.

As we read the record, it appears that the area, which is the subject matter of this dispute, is completely, or almost completely, surrounded by land which is zoned in tracts ranging from two and a half acres to twenty acres. There has been a substantial development in the neighborhood of expensive suburban dwellings, most of which, if not all, requiring their own sewage disposal fields and water wells. It is obvious that the re-zoning granted is not in harmony with the present area development.

We turn first to defendant's answer brief, which urges that certiorari is not the proper remedy in this case. In this it is in error. Whenever the question is whether a public Board or Commission has exceeded its jurisdiction or abused its discretion, certiorari is the proper remedy to secure a review of its action. Rule 106, R.C.P. Colo. Also see *Board of Adjustment of the City and County of Denver v. Handley, et al.* (1939), 105 Colo. 180, 95 P. (2d) 823; *Kane v. Board of Appeals of City of Medford* (1930), 273 Mass. 97, 173 N.E. 1; *W. L. Clapp v. Knox County, Tennessee* (1954), 197 Tenn. 422, 273 S.W. (2d) 694; *Auditorium Inc. v. Board of Ad-*

*justment of Mayor and Council of Wilmington* (1952), 47 Del. 373, 91 A. (2d) 528.

14 C.J.S. 180, *Certiorari*, §37a, says:

" * * * whenever there is no direct remedy provided for review, the writ of certiorari lies, even though some other remedy can be conceived as possible in the future."

Although several grounds of error are urged by plaintiffs, we deem it necessary to discuss only three of them, to-wit:

1. The allegation that defendant exceeded its jurisdiction and abused its discretion by conducting a hearing and re-zoning of the area of Charlou Park, Third Filing, upon what is alleged to be an insufficient, ambiguous and false public notice of the statutory hearing.

2. That the "Defendant greatly abused its discretion and exceeded its jurisdiction by failing to provide and maintain on a current basis a zoning map to accompany the 1956 amended zoning resolution of Arapahoe County, by presuming to act as if such map actually existed and Charlou Park, Third Filing, was shown thereon. Because of the want of such map, such amended zoning resolution is null and void."

3. That "The lower Court erred in holding that the actions of defendant in re-zoning the area of Charlou Park, Third Filing, was not an arbitrary and capricious exercise of the powers vested in defendant but was reasonable under the facts and circumstances since there was no showing that such change of zoning was required by changed conditions of the area, and it was further shown that in reliance upon zoning existing prior to November 12, 1957, plaintiffs had expended large sums in developing adjacent areas and erecting homes thereon."

C.R.S. '53, 106-2-15, provides:

"Regulations may be amended. — From time to time the board of county commissioners may amend the number, shape, boundaries or area of any district, or any regulation of or within such district, or any other provisions of the zoning resolution. Any such amendment

shall not be made or become effective unless the same shall have been proposed by or be first submitted for the approval, disapproval or suggestions of the county planning commission. If disapproved by such commission within thirty days after such submission, such amendment, to become effective, shall receive the favorable vote of not less than a majority of the entire membership of the board of county commissioners. Before finally adopting any such amendment the board of county commissioners shall hold a public hearing thereon, and at least thirty days' notice of the time and place of which shall be given by at least one publication in a newspaper of general circulation in the county."

In attempted compliance with the above statute, defendant, on September 19, 1957, caused the following notice to be published in "The Englewood Herald and Enterprise":

"NOTICE

"WHEREAS: the Board of County Commissioners of Arapahoe County has received petitions or recommendations from the County Planning Commission as follows:

"1. Charlou Park, Third Filing. A-2 to R. Therefore Notice is hereby given that a public hearing concerning such change will be held at the Court House, Littleton, Colorado, on Monday, October 28, 1957, at 10:00 o'clock A.M.

Marjorie Page, Ex-Officio
Clerk to the Board of
County Commissioners."

On September 25, 1957, a differently worded notice of the request for zone change was posted on the premises. Various letters and petitions for and against the re-zoning were received by the defendant, and plaintiffs appeared at the hearing protesting the proposed re-zoning and objected to the published notice given as being improper and unconstitutional. We note that in the published notice the words "zone" or "zoning" do not appear, nor does any mention of the term "Arapahoe

County Zoning Resolution" appear. A change is mentioned from "A-2" to "R," and it is anybody's guess, unless he be a zoning expert, as to what that phrase means.

██ 66 C.J.S. 654, *Notice*, §16, states:

"A notice must be clear, definite, and explicit, and not ambiguous. The notice is not clear unless its meaning can be apprehended without explanation or argument."

In *Brachfeld v. Sforza* (1952), 114 N.Y.S. (2d) 722, 118 N.Y.S. (2d) 631, the court said:

" * * * a notice of hearing as the basis of a local ordinance should unambiguously set forth reasonable information concerning the subject matter of the hearing to the end that adequate warning be given to all persons whose rights may be affected by action of the local board. Changes in zoning ordinances affect property rights, and the provisions as to a notice of hearing must be strictly complied with. A notice which does not warn of the nature of the proposed amendments is no notice. What was said in *Palmer v. Mann,* 206 App. Div. 484, 201 N.Y.S. 525, 528, affirmed 237 N.Y. 616, 143 N.E. 765, is pertinent, to wit: ' * * * when a statute requires a notice to be given to the public, such a notice should fairly be given the meaning it would reflect upon the mind of the ordinary layman, and not as it would be construed by one familiar with the technicalities solely applicable to the laws and rules of the zoning commission. Otherwise such a notice, instead of informing, would actually mislead the public, including the persons immediately interested. * * * It is, at least, not too much to ask that any ambiguity in a notice to the public of so important a change, which is the only notice that the public has, should be resolved against the notice.' "

The record before us shows that even if a layman could understand that this notice related to a proposed zone change, the property in question was in fact not located in an A-2 Farming District, but, at the time in question, was in an A-1 Farm District. The mix-up was

due to an earlier change in the zoning resolution which consolidated the three farming districts into two districts.

We are persuaded that the notice involved was insufficient, ambiguous and misleading, and unintelligible to the average citizen who might be affected thereby. It could confer no jurisdiction upon defendant to proceed with any hearing thereunder, even though some of those affected did appear at the hearing or file petitions for or against the proposal. Consequently, defendant's action in so proceeding was without jurisdiction, constituted an abuse of discretion, and was an arbitrary and capricious act. See *Carpenter v. People ex rel. Cusack* (1944), 112 Colo. 151, 148 P. (2d) 371; *Board of Adjustment of the City and County of Denver v. Handley*, supra.

It appears to us that this notice is somewhat on the same plane as the summons and complaint in *Scott v. Denver* (1952), 125 Colo. 68, 241 P. (2d) 857, wherein this court said: "One guess is as good as another," when a defendant was required to answer the charge of "DIC-55-56-57-52A-10A."

Defendant strongly urges that these particular plaintiffs, having appeared, are in no position to challenge the validity of the public notice. However, this is not a mere irregularity in the service of a personal notice which may, on a proper showing, be deemed to have been waived. See *R.I. Home Builders, Inc. v. Budlong Rose Co.* (1950), 77 R.I. 147, 74 A. (2d) 237; *Crozier v. County Commissioners* (1953), 202 Md. 401, 97 A. (2d) 296; 37 A.L.R. (2d) 1137.

In *People v. Schaeffer* (1937), 100 Colo. 70, 65 P. (2d) 699, it was said:

"It has been the rule in this state since territorial days that statutes relating to publication of notice in legal proceedings must be strictly complied with. * * *

"Notice by publication is the law's substitute for personal notice. It is frequently called constructive notice,

but to be effective as against any one whose rights are involved a compliance with, an allegation of, or a showing of strict compliance with the proper statute is essential to a good complaint."

66 C.J.S. 652, *Notice,* §14, states:

"If, however, legislative authority is delegated by the state to some inferior body with a restriction by which it is to be used only on notice to persons whose interests are thereby affected, compliance therewith is a condition precedent to its lawful exercise."

■ We conclude that the failure properly to recite that this was a proposed change in the county zoning resolution and failure to give the correct names of the present zone and the proposed future zone are failures to comply with mandatory conditions precedent to the. proper exercise of the power delegated to the defendant by the statute.

We consider next the problem of failure to prepare and have on hand the maps relating to the 1956 Zoning Amendment.

The procedure to determine the zone, if any, of a given plot of land in Arapahoe County is first, to refer to the zoning map and second, to consult the zoning resolution to determine the requirements of the zoning district.

In the instant case it is conceded that no zoning map was prepared, filed or adopted as part of the amended zoning resolution of 1956. This is in spite of the defendant's solemn statement in the zoning amendment to the contrary. This omission is admittedly not caused by an oversight, but because no one got around to it due to the illness of the cartographer.

In passing we note that defendant, when it first adopted a county zoning plan for parts of Arapahoe County, some years ago, adopted not only a zoning resolution but also maps corollary thereto; however, the issue here is its 1956 procedure and not the validity of its earlier actions.

Although C.R.S. '53, 106-2, does not require the actual maps of a zoning plan to be published along with a notice, section 10 does require the County Planning Commission, when it formulates a zoning plan or plans, to submit both the full text of the zoning resolution and the maps representing its recommendations to the Board of County Commissioners. C.R.S. '53, 106-2-11, provides that before the adoption of any part of such a zoning plan there shall be a public hearing thereon " * * * the time and place of which at least thirty days' notice shall be given by one publication in a newspaper of general circulation in the county. Such notice shall state the place at which the text *and maps* so certified by the county planning commission may be examined." (Emphasis supplied.)

The 1956 amended zoning resolution does not describe the boundaries of the zoning districts, but provides the following in accordance with section 11:

"Section 4. Zoning Map and Boundaries of Zone Districts.

"A. Maps.

"1. The aforesaid zone symbols and the boundaries of such zone districts are shown upon a map attached hereto and made a part hereof, being designated as the 'Zoning Map.' Said map and all the notations, references and other information shown thereon are as much a part of this Resolution as if the matters and information set forth by said map were fully described herein."

58 Am. Jur. 960-961, *Notice,* §32, states:

"A zoning map is sometimes annexed to the ordinance, made a part of it, and given a controlling effect. Indeed, a zoning ordinance may be held void for failure to comply with a statutory provision requiring the filing or publication of maps, charts, plans, or other descriptive matter, or a statement of the place where the map is on file and can be found." Also see 39 A.L.R. (2d) 772-73 for cases in accord.

In *Milano v. Town of Patterson* (1947), 93 N.Y.S. (2d)

419, 197 N.Y. Miscl. 457, the ordinance under consideration provided that the boundaries of the zoning districts were shown "on the map entitled 'Building Zone Map of the Town of Patterson' which accompanies this ordinance and is hereby declared to be a part thereof." No map was ever published, although the ordinance was published. The New York Court held this ordinance was void because of the omission. See also *Fierst v. William Penn Memorial Corporation* (1933), 311 Pa. 263, 166 A. 761; *Village of Durand v. Love* (1931), 254 Mich. 538, 236 N.W. 855.

To paraphrase the statutory requirements, sections 11 and 15 of C.R.S. '53, 106-2, permit the original zoning plan, which zones an unincorporated area and sets up regulations for land uses, to be adopted only after the thirty days' public notice with both text and maps available to the public at the county court house. Mere amendments to such a plan, whereby the number, shape, boundaries or areas of a district are to be altered or part of the regulations or other provisions of the text changed, can be adopted after the required public notice setting out the proposed changes, without first having maps prepared for the public's perusal. The notice itself in these cases perforce includes the text of the amendments.

██ Obviously, the latter types of changes are considered of a minor nature in relation to an over-all plan. Though maps, to show district boundary changes, are not required to accompany published notices describing the land affected, that does not mean that a re-adopted or comprehensive amendment of the original zoning plan, such as we have here, which affects all zoned areas, is in that category. The legislative intent very properly was and is that over-all plans or changes should be given such publicity as will reasonably inform those owners affected, as well as the public, of what is proposed. The 1956 amended zoning resolution, by its very wording and scope, not only was intended to be, but was adopted pur-

suant to the requirements of section 11 dealing with adoption of a zoning plan, not section 15 relating to amendments. The proper maps had to accompany it along its route.

Of course, though it is not required by statute, county commissioners could provide at the building inspector's or their own offices maps of proposed changes of district boundaries under section 15. In any event, as soon as reasonably possible after their adoption, the actual changes should be placed upon an authorized copy of the original county zoning map or maps with the date of the action shown along with the type of change. (See C.R.S. '53, 106-2-7, for a somewhat similar procedure for planning commissions' actions relating to master plans.) This enables the public readily to discover the relative location of the legal description contained in both the public notice and the commissioners' minutes.

■ It is the duty of the zoning officials to have proper information available in a public office so that those affected can determine their rights and privileges, as well as the duties and restrictions applicable to them.

It follows that defendant, having failed to obey the statute and its own resolution by not providing an attached zoning map, and in attempting to proceed upon an incomplete and null and void amended zoning resolution, exceeded its jurisdiction.

There is a third reason why the trial court erred in failing to grant relief to plaintiffs.

This record discloses that there had been a denial of a proposed re-zoning of the area in question sometime prior to the current action. It fails to show that at the time in question there were changed conditions in the area that would require or permit a change such as that requested.

The plaintiffs alleged that they have expended considerable sums in developing the area and in erecting homes in reliance upon the existing zoning regulations, and upon the past statements of members of the Board

to the effect that the current zoning would not be altered unless there was some change in the character of the neighborhood.

██ Though we recognize this could result in hardships upon these parties were their zone district to be re-classified, we point out that estoppel does not operate to prevent a legislative body or commission from carrying out its public functions, and if conditions warranted later changes it is the duty of such public bodies to act accordingly.

In the instant case it is apparent that one of the primary objectives of proper zoning would be defeated if the courts were to approve such a flagrant disregard of the rights of those immediately affected, as has occurred here.

In *Page v. City of Portland* (1946), 178 Ore. 632, 165 P. (2d) 280, at 283, the court said:

"Amendments to zoning ordinances should be made with caution and only when changing conditions clearly require amendment."

In *Kennedy v. City of Evanston* (1932), 348 Ill. 426, 181 N.E. 312, at 313 and 314, the court stated:

"If a general zoning ordinance is passed and persons buy property in a certain district, they have a right to rely upon the rule of law that the classification made in the general ordinance will not be changed unless the change is required for the public good. * * *

"The power to amend is not arbitrary. It cannot be exercised merely because certain individuals want it done or think it ought to be done. The change must be necessary for the public good."

In *De Bartolo v. Village of Oak Park* (1947), 396 Ill. 404, 71 N.E. (2d) 693, at 696, it was held:

"When a general zoning ordinance is passed, those who buy property in zoned districts have the right to rely upon the rule of law that the classification made in the ordinance will not be changed unless the change will be required for the public good."

108

*City of Springfield v. Vancil* (1947), 398 Ill. 575, 76 N.E. (2d) 471, is in accord with this protective rule.

The defendant, by amending the Arapahoe County Zoning Resolution, as it did, failed to take into consideration the need for reasonable stability in zoning regulations and the requirement of certainty of description, as well as proper notice of the proposed change. In so doing, it abused its discretion, acted arbitrarily and capriciously, and exceeded its jurisdiction.

The judgment is reversed and the cause remanded to the trial court with directions to order the defendant to vacate, set aside and hold for naught its order of November 12, 1957, purporting to amend the Zoning Resolution of Arapahoe County by re-zoning Charlou Park, Third Filing, from an A-2 Farm Residence District to an R-Residence District.

MR. JUSTICE FRANTZ and MR. JUSTICE DAY do not participate.