**Alfred T. WHATLEY and Mary Siekman, Plaintiffs–Appellants,**

v.

**SUMMIT COUNTY BOARD OF COUNTY COMMISSIONERS, Gary M. Lindstrom, Tom Long, William Wallace, their predecessors Joe Sands and Marsha Osborne and their successors; Summit County Upper Blue Planning Commis-**

sion, Bobby Craig, Verna Enyeart, Leigh Girvin–Yule, Randy Griffin, Dawn Smith, Jim Stover and Mike Turek and their successors, all individually and in their capacity as members of said commissions; Brian Peters, individually and in his capacity as former Summit County Planning Director and any successors; Bud & Dot, L.L.L.P., a Colorado Limited Partnership; Gary Carlston and Nancy Carlston, Defendants–Appellees.

No. 01CA2293.

Colorado Court of Appeals, Div. I.

March 13, 2003.

Rehearing Denied May 1, 2003.

Certiorari Denied Oct. 6, 2003.*

* Justice KOURLIS would grant as to the following issues:

Whether the Planned Unit Development Act of 1972 properly can be interpreted to require the consent of owners of property within the planned unit development ("PUD") only as to the initial designation of the PUD, but not to any amendments.

Whether an amendment to a PUD in 1995 added an additional unit of density and was, therefore, a "major amendment" as that term is defined under the Summit County Land Use Code, thereby requiring notice and an opportunity to be heard.

Susan Morath Horner, Boulder, Colorado, for Plaintiffs–Appellants.

Hall & Evans, L.L.C., Josh A. Marks, Melanie B. Lewis, Denver, Colorado, for Defendants–Appellees, Summit County Board of County Commissioners and it members, Summit County Upper Blue Planning Commission and its members, and Brian Peters.

Berg Hill Greenleaf & Ruscitti, L.L.P., George V. Berg, Jr., Heidi C. Potter, Boulder, Colorado, for Defendants–Appellees Bud & Dot L.L.L.P., Gary Carlston, and Nancy Carlston.

Opinion by Judge JONES.

In this action, for relief under 42 U.S.C. § 1983, and for declaratory and injunctive relief under C.R.C.P. 57 and 65, plaintiffs, Alfred T. Whatley and his wife, Mary Siekman (the Whatleys), appeal the summary judgment entered against them and in favor of all defendants, the Summit County Board of County Commissioners and its members, Summit County Upper Blue Planning Commission and its members, and Director of Planning Brian Peters (the county defendants); and Bud & Dot, L.L.L.P., and Gary and Nancy Carlston (the Carlston defendants). We affirm in part, reverse in part, and remand.

The underlying dispute concerns the development process for approximately 480 acres of land in Summit County. The land, known as the Whatley Ranch, is within a few miles of the town of Breckenridge.

In 1965, Alfred T. Whatley received fee title to the entire tract of land, and in 1987, as the owner and developer of the ranch, Whatley applied for and was granted approval for the rezoning of the ranch from an agricultural status to a planned unit development (PUD). The PUD did not approve extensive development on the land, but merely created separate lots for the three existing log cabins on the ranch. Each of two newer cabins was given its own lot (lots one and two), which together with lot three, containing the original homestead house, made up the remainder of the PUD.

In 1989 and 1990, Whatley obtained amendments to the PUD. By 1990, the net result of the changes was to establish new lot lines on the ranch. Lots one and two remained with their existing structures, and another small, undeveloped lot was created, allowing the addition of one single family home. The cluster of the three small lots became known as the Whatley Reserve. The remainder of the ranch, 475 acres, contained the original homestead house. Thus, the entire ranch was approved to contain four residential units.

As part of a personal bankruptcy proceeding in 1993, the Whatleys sold the entire tract of land to a third party, except that they reserved a life estate for themselves in lot one of the Whatley Reserve, where they continued to live.

Soon after the sale, the Whatleys filed suit against the third party, alleging a number of claims related to the sale of the land. As part of the lawsuit, the Whatleys filed a notice of lis pendens, clouding title to the ranch. During the pendency of the lawsuit, the Carlston defendants began negotiating with the third party for the purchase of Whatley Ranch, but the sale could not be closed until title was cleared of the lis pendens.

In 1995, to facilitate their purchase of the ranch, the Carlston defendants entered into a settlement agreement with the Whatleys and the third party. As relevant here, the parties agreed that the lis pendens would be released, clearing the title to the land; the Carlston defendants would pay the Whatleys $50,000 and convey to them fee title to lot one of the Whatley Reserve; and the Carlstons would have the right to submit the Whatleys' lot one to rezoning.

In addition, the parties agreed that the Carlstons would pay the Whatleys an additional amount for the sale of the ranch in the event that the Carlstons obtained a rezoning of the land in excess of twenty-four lots; Whatley agreed to execute, at the Carlstons' request, a letter indicating that he consented to the resubdivision of the ranch into ten additional residential units or home sites; and the Whatleys granted the Carlston defendants the option to purchase lot one of the ranch if the Whatleys should choose to sell it, or both died, whichever came first.

Both in 1995, before the Carlston defendants had completed purchase of the ranch, and in 1996, after the Carlstons had purchased the ranch under their new business entity, Bud & Dot, L.L.L.P., and had transferred title to lot one to the Whatleys, the Carlston defendants applied for and received county approval for amendments to the Whatley Ranch PUD. The amendments changed lot lines, increased the number of permitted home sites, and altered several other aspects of the ranch.

The Whatleys were not aware of these amendments until 1997. In 1999, they initiated this action in the trial court. In their amended complaint, the Whatleys' first claim sought injunctive relief under C.R.C.P. 106, alleging that county officials had acted outside the scope of their authority in approving the amendments; their second claim sought damages and attorney fees under 42 U.S.C. § 1983, alleging generally that the defendants' failures to obtain the Whatleys' consent or give them notice of the PUD amendments violated the Whatleys' rights to procedural due process; and their third claim sought declaratory and injunctive relief under C.R.C.P. 57 and 65 for the allegedly improper manner in which the amendments were enacted.

The county defendants filed a motion for partial dismissal of the Whatleys' first and second claims for relief. The court granted the motion as to the Whatleys' first claim for relief under C.R.C.P. 106, and deferred ruling as to the second claim under. § 1983. The court's dismissal of the first claim for relief is not at issue here.

Because the parties had submitted matters outside the pleadings in support of and in response to the motion for partial dismissal, the court proceeded, pursuant to C.R.C.P. 12(c), to treat the motion as one for summary judgment and disposed of all the claims remaining against the county defendants as required by C.R.C.P. 56.

The Whatleys then filed a motion seeking partial summary judgment as to the § 1983 claim, and the Carlston defendants filed their own motion for summary judgment requesting judgment in their favor on all the Whatleys' claims against them.

The court eventually decided all claims for relief as a matter of law, granting both the County defendants' and the Carlston defendants' motions for summary judgment and denying the Whatleys' motion for partial summary judgment.

I.

The Whatleys first contend that the trial court erred in denying their § 1983 claim and that the lack of notice to them before the 1995 and 1996 amendments were passed amounted to the deprivation of a constitutionally protected property interest without due process of law. We do not agree.

We conduct a de novo review of a trial court's grant of summary judgment. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.*, 901 P.2d 1251 (Colo.1995). Summary judgment is proper if the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c). In the context of summary judgment, a material fact is a fact that affects the outcome of the case. *Keybank v. Mascarenas*, 17 P.3d 209 (Colo.App.2000).

The moving party has the initial burden to show that the nonmoving party's case is not supported by the evidence. Once the moving party meets its initial burden, the burden shifts to the nonmoving party to establish that there is a triable issue of fact. *Civil Serv. Comm'n v. Pinder*, 812 P.2d 645 (Colo. 1991). To meet its burden, the nonmoving party must present specific facts establishing a genuine issue for trial; simply relying on allegations from the pleadings is not enough. C.R.C.P. 56(e). If the court has any doubts concerning the absence of disputes over material facts, the court must resolve its doubts against the moving party. *Elm Distribs., Inc. v. Tri–Centennial Corp.*, 768 P.2d 215 (Colo.1989).

■ To state a claim for relief under § 1983, plaintiffs must establish that they were deprived of a right recognized by the Constitution or laws of the United States and that the alleged deprivation was committed under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999); *Hillside Cmty. Church v. Olson*, 58 P.3d 1021 (Colo.2002).

■ "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan, supra*, 526 U.S. at 59, 119 S.Ct. at 989. It is necessary to consider whether a property right has been identified, whether government action with respect to that property right amounted to a deprivation, and whether the deprivation, if one is found, occurred without due process of law. *Hillside Cmty. Church v. Olson, supra*.

■ A protected interest in property exists when a person has a legitimate claim of entitlement to the property. *Bd. of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Ewy v. Sturtevant*, 962 P.2d 991 (Colo.App.1998).

■ The parameters of protected property interests are largely established by state law. However, state laws establishing procedures related to the regulation of property cannot themselves create a protected property interest, as "there can be no property right in mere procedure." *Hillside Cmty. Church v. Olson, supra*, 58 P.3d at 1026. And a state's failure to follow its own procedural requirements "does not create a violation of constitutional proportions." *Hillside Cmty. Church v. Olson, supra*, 58 P.3d at 1027.

■ The Due Process Clause guarantees that the substantive rights of life, liberty, and property cannot be deprived without compliance with constitutionally adequate procedures; yet, "[t]he categories of substance and procedure are distinct." Thus, a protected property interest cannot be defined by "the procedures provided for its deprivation any more than can life or liberty." *Hillside Cmty. Church v. Olson, supra*, 58 P.3d at 1026.

■ Here, the Whatleys assert that state statutes and local ordinances that set forth the procedural requirements for enacting changes to land use status themselves established constitutionally protected rights to due process for the property owners both within and adjacent to the subject land.

The Whatleys' assertion and the facts and issues of this case are analogous to those addressed in the recent supreme court case of *Hillside Community. Church v. Olson, supra*. While *Hillside* did not involve a PUD, the court's holding broadly addresses the nature of property rights within the land use context and can be given full effect here. Therefore, the supreme court's decision controls our analysis.

In *Hillside*, the supreme court considered, for the first time, whether state law procedural protections create a cognizable proper-

ty right in the land use context and concluded that they did not.

The plaintiffs in *Hillside* owned residential property that bordered a church's property. The church began construction of an addition without obtaining a building permit and without requesting a special use permit, which was required because the structure would exceed the zoning area's height limits.

The city eventually issued a building permit to the church, but not a special use permit. This error came to the city's attention after the addition was substantially complete, but the city attorney did not then require a special use permit to be obtained, nor did he revoke the building permit or require the addition to be modified or removed.

The church belatedly obtained a height variance for the structure, and the city issued a certificate of occupancy. The plaintiffs sued the city and the church, alleging, among other things, that the city's failure to hold a public hearing before issuing a special use permit for the addition to the church, as required by the municipal code, amounted to a deprivation of their due process rights and entitled them to relief under § 1983.

The supreme court stated that the plaintiffs had "no property right at issue in this case"; that they did not have a "preexisting entitlement" to the procedure; that "[a] state procedural failure alone . . . does not create a violation of constitutional proportions"; and that, while the failure to follow procedures did not rise to the level of a procedural due process claim, state law remedies were properly pursued. The court concluded: "[W]e hold that [the plaintiffs] did not have a cognizable property interest in their claimed right to notice of, and opportunity to participate in, a special use permit hearing. . . ." *Hillside Cmty. Church v. Olson, supra,* 58 P.3d at 1025, 1027.

Similarly, here, to prove that a protected property interest existed and was violated without due process, the Whatleys rely on the Planned Unit Development Act of 1972 (PUD Act), §§ 24–67–101 through –108, C.R.S.2002; §§ 30–28–116 and 31–23–304, C.R.S.2002; and the Summit County Land Use and Development Code, §§ 12202.03(D) and 13503.01 through .03 (1988)(the development code), all of which establish procedures for the amendment of a PUD. We conclude that none of those provisions relates to a federally protected substantive property interest, and "there can be no property right in mere procedure." *Hillside Cmty. Church v. Olson, supra,* 58 P.3d at 1026.

Accordingly, we agree with the trial court's conclusion that the Whatleys have not met their burden to establish that they were deprived of a protected property right. *See Civil Serv. Comm'n v. Pinder, supra.* Having so concluded, we need not analyze the other elements of a § 1983 claim.

Thus, the trial court properly entered summary judgment denying the Whatleys' claim for relief under § 1983.

## II.

■ The Whatleys next contend that the trial court erred in denying their claim that the Whatley Ranch PUD amendments are void because of defendants' failures to obtain the Whatleys' consent. The Whatleys argue that the PUD Act, specifically § 24–67–105, C.R.S.2002, requires that no PUD amendment can be enacted without the consent of all landowners within the PUD and that any amendment enacted without such consent is void. We do not agree.

Statutory interpretation is a matter of law. *United Airlines, Inc. v. Indus. Claims Appeals Office,* 993 P.2d 1152 (Colo.2000). If statutory language is clear and unambiguous, statutes are to be construed as written, giving the ordinary meaning and full effect to the words chosen. *City of Lakewood v. Mavromatis,* 817 P.2d 90 (Colo.1991). A court must interpret a statute as a whole to give a consistent, harmonious, and sensible effect to all of its parts. *People v. Dist. Court,* 713 P.2d 918 (Colo.1986).

Section 24–67–105, titled, "Standards and conditions for planned unit development," reads, in part:

Every resolution or ordinance adopted pursuant to [the PUD Act] article shall set forth the standards and conditions by which a *proposed* planned unit develop-

ment shall be evaluated.... No planned unit development may be *approved* by a county or municipality without the written consent of the landowner[s] whose properties are included within the planned unit development.

Section 24–67–105(1), C.R.S.2002 (emphasis added).

In contrast, § 24–67–106, C.R.S.2002, titled "Enforcement and modification of provisions of the plan," provides, in part:

No substantial modification, removal, or release of the provisions of the plan by the county or municipality shall be permitted except upon a [specified] finding by the county or municipality, following a public hearing called and held in accordance with the provisions of section 24–67–104(1)(e)....

Section 24–67–106(3)(b), C.R.S.2002 (emphasis added).

Viewed as a whole, the statute's structure differentiates between the procedures for the initial creation of a PUD and the procedures for the subsequent enforcement and modification of an existing PUD. Plainly, § 24–67–105 requires that, before county "approval" of a PUD, all landowners within the "proposed" PUD consent to their inclusion. However, § 24–67–106 only requires notice and hearing, and not consent, before a "modification" may be enacted to an existing PUD. Because "it is presumed that the General Assembly meant what it clearly said," *State v. Nieto*, 993 P.2d 493, 500 (Colo.2000), § 24–67–106 necessarily governs the procedures for amending a PUD.

Hence, we agree with the trial court's conclusion that the Whatleys' consent was not required before an amendment to the Whatley Ranch PUD could be enacted. It is a separate question, however, whether the procedures required by § 24–67–106 were followed.

### III.

■ The Whatleys also contend that the trial court erred in granting summary judgment in favor of defendants because the PUD amendments are void based on the

defendants' failures to provide proper notice of the proposed changes. We agree.

Section 24–67–106(3) of the PUD Act requires that, before an amendment may be approved, the provisions of § 24–67–104(1)(e), C.R.S.2002, must be followed. Section 24–67–104(1)(e) requires that the board designated to review PUDs hold at least one public hearing, in accordance with § 30–28–116 or § 31–23–304, before making any decision on the proposed amendment.

According to § 30–28–116, a board of county commissioners may amend the characteristics of any type of zoning district. But before adoption of any such amendment, the board "shall hold a public hearing thereon, and at least fourteen days' notice of the time and place of such hearing shall be given by at least one publication in a newspaper of general circulation in the county."

Similarly, according to § 31–23–304, a municipality's governing body shall define the manner in which regulations and restrictions within a municipality's districts can be modified. Yet, no change shall become effective until there has been "a public hearing thereon in which parties in interest and citizens shall have an opportunity to be heard," and "[a]t least fifteen days' notice of the time and place of such hearing shall be published in an official paper or a paper of general circulation in such municipality."

Further, the county's development code, in § 12202.03(D), provides that PUD amendments "shall be reviewed and acted upon as a rezoning application, subject to the County's procedures for zoning amendments and to the requirements for findings under [§ 24–67–106(3)(b)] unless such amendment is determined to be minor in nature." The procedures for zoning amendments follow the requirements for all public hearings and are set forth in § 13500 of the development code. Section 13503.02(E) specifies that notices for public hearings shall include, among other things, "[h]earing, date, time and place." Section 13503.01 requires that whenever notice of a public hearing is required to be given, notice shall be published "at least once in a newspaper of general circulation for the time period specified in section 13503.03," which is "at least 14 days prior to public

hearings held by the Board of County Commissioners."

In addition to the general notice provision, § 13503.01(B)(2) sets forth special notice requirements for certain PUD modifications. It reads:

PUD Modifications: Written notice of the public hearing shall be delivered or mailed, first-class postage prepaid, at least fifteen days prior to the public hearing to adjoining landowners. Written notice as specified above shall also be sent to property owners within the PUD as follows:

a. Modifications where the impact is limited to the immediate area around a specified site and the overall intent of the PUD is not affected: To all property owners within 300 feet of the boundary of the site except the Community Development Director may extend the radius used for the noticing based on the nature of the proposal and its potential impacts.

b. Modifications where the impact is general within the PUD: To all property owners within the PUD.

■■■ When legislative authority is delegated to an inferior body with a restriction that it is to be exercised after notice to persons whose interests are affected, compliance with those notice requirements is a prerequisite to the lawful exercise of the delegated authority. *Holly Dev., Inc. v. Bd. of County Comm'rs,* 140 Colo. 95, 342 P.2d 1032 (1959); *People v. Schaeffer,* 100 Colo. 70, 65 P.2d 699 (1937). Hence, flaws in the prescribed notice procedure constitute "failures to comply with mandatory conditions precedent to the proper exercise of the power." *Holly Dev., Inc. v. Bd. of County Comm'rs, supra,* 140 Colo. at 103, 342 P.2d at 1037.

■ To be sufficient, a notice must set forth the information "reasonably necessary to provide adequate warning" to all persons whose rights may be affected by the proposed action. At a minimum, a notice must provide "the date, time, and place of the hearing and apprise the public of the subject matter of the hearing and the nature of the proposed zoning change." *Hallmark Build-*

*ers & Realty v. City of Gunnison,* 650 P.2d 556, 559 (Colo.1982).

■ The interpretation of a zoning ordinance by an administrator and zoning body is entitled to deference. Nevertheless, a reviewing court is not bound by such a decision if there is no competent evidence to support it or if the decision misconstrues or misapplies the law. *Anderson v. Bd. of Adjustment,* 931 P.2d 517 (Colo.App.1996).

A.

In 1995, before the Carlstons' purchase of the ranch was complete, the Carlstons initiated an amendment to the Whatley Ranch PUD. The director of planning and the board of county commissioners treated the application as a "proposed minor modification" to the PUD; accordingly, no written notice regarding the pending modification was sent to any person connected with Whatley Ranch prior to the public hearing and the board's vote on the matter.

The 1995 amendment purportedly added no new density to the PUD which, since 1990, had approval for four units of density (three existing and one new). The amendment stated that its purpose was to vacate the lot lines for lot three, which contained a development right for one new single family residence, and to transfer that development right to the balance of the ranch. The amendment, thus, had the effect of increasing the density of the ranch because, at that time, the balance of the ranch had no right for new development, but was misinterpreted as having approval for one new single family residence. As a result, after the 1995 amendment, the Whatley Ranch PUD had county approval for the three existing residential units and two new units of development.

Further, the Whatleys were not aware that the 1995 amendment had been proposed or approved, even though Alfred T. Whatley's name had been listed as the "Owner/Developer" of the property on the "Planned Unit Development Designation" form, which appears to be an agreement to the amendment's terms by the "Owner/Developer" of the PUD and the board of county commissioners. Further, Alfred T. Whatley's name

had been typed on that form in a manner that suggested his actual signature as "Owner/Developer" had appeared on an original document.

The development code, in § 12209.02, reads:

The Planning Director shall determine whether the proposed modification is considered major or minor in nature. For the purposes of a PUD review, a proposed amendment is considered minor upon a determination by the Planning Director that the proposed amendment is not substantial and conforms to the intent and integrity of the original planned development unit, that no increase in total number of units or commercial square footage or new use is requested and no decrease in open space is requested.

In addition, § 12209.05 sets forth the standards for approving PUD modifications. Before the approval of any amendment, the board of county commissioners must make several findings about the impact of the proposed modification. However, in order to make a minor PUD modification, which does not require public notice or hearing, the board also must find that the proposed amendment is "not substantial and conforms to the intent and integrity of the original planned unit development, that no increase in total number of units or commercial square footage or new use is requested and no decrease in open space is requested." Summit County Land Use and Development Code, § 12209.05(D).

Here, when the director of planning reported the proposed 1995 amendment to the board, the Whatley Ranch PUD was misinterpreted as having been approved for an additional unit of development. This mistake apparently occurred because the Carlston defendants' letter that accompanied the application for the amendment so characterized the status of the land.

It is unclear when, why, or how the misinterpretation of the status of the Whatley Ranch PUD occurred. Moreover, it is unclear whether the misinterpretation, which, in effect, increased the total number of units approved for the PUD, making it a major

modification, could have triggered the development code's notice requirements.

When this mistake and its possible implications are considered in light of the other irregularities that occurred in the amendment process, judgment as a matter of law is precluded.

Thus, genuine issues of material fact exist, the resolution of which could affect the outcome of the case. If the required notice procedures were not properly followed, the county did not meet the prerequisites to the lawful exercise of its delegated authority. *See Holly Dev., Inc. v. Bd. of County Comm'rs, supra.*

**B.**

In 1996, the Carlstons initiated another proposed amendment to the Whatley Ranch PUD, which was also approved. The director of planning and the board of county commissioners treated this amendment as a major modification to the PUD and attempted to follow statutory and development code requirements for providing notice to the appropriate landowners before the amendment was put to a vote.

Among other things, the 1996 amendment proposed to increase the density of the PUD by adding approval for ten new single family homes, including several approved auxiliary buildings per home. As with the prior amendment, the record reflects that the "Planned Unit Development Designation" form appears to have included several irregularities. The form listed Bud & Dot, L.L.L.P., as the "Owner/Developer," but again listed Alfred T. Whatley on the signature page with no accompanying signature, indicating that he, and not Bud & Dot, L.L.L.P., was representing the PUD. Of most relevance here, there are flaws in the county's process used to give notice of the proposed changes to the affected landowners. The notice, as published, listed the wrong date for the public hearing on the issue, and the mailed notices may not have been sent to all the required landowners.

Notice is not rendered invalid when the incorrect date listed on the published notice falls before the actual hearing date,

because people who arrive on the early date may still be informed of the correct date and attend the actual hearing. *Grant v. Bd. of County Comm'rs,* 164, Colo. 69, 164 Colo. 69, 432 P.2d 762 (1967). However, we agree with the trial court that the notice published in this case, with a date that fell after the date of public hearing, was invalid.

The failure to include an accurate date also means the notice failed to comply with the county's own requirement, in § 13503.02(E), that notices of public hearing shall include the "[h]earing, date, time and place." Yet, more importantly, this flaw constitutes a failure to comply with one of the "mandatory conditions precedent to the proper exercise of power," effectively invalidating the county's statutory grant of authority and rendering the county powerless to act on the proposed amendment.

For this reason alone, summary judgment in favor of the defendants on the Whatleys' claim for relief under C.R.C.P. 57 and 65 was improper.

■ Another failure to comply with the notice requirements also precludes judgment in the defendants' favor as a matter of law. The county deemed the 1996 amendment to be a major modification, which triggers the requirements in § 13501.01 for published notice and mailed notice to landowners whose property adjoins the PUD.

In addition, major modifications trigger other requirements to mail notice to some or all landowners within the PUD, depending on the anticipated impact of the modification. When the impact of the amendment will be limited to the immediate area around the site of the change and the overall intent of the PUD will not affected, § 13503.01(B)(2)(a) requires additional notice to be mailed to all property owners within 300 feet of the boundary of the site. The county followed this provision here. Thus, the mailing to property owners only within the 300-foot radius of the site did not include mailed notice to the Whatleys.

However, when the impact of the modification will be general, § 13503.01(B)(2)(b) requires notice to be mailed to all property owners within the PUD.

Here, the amendment added ten new single family residences, each of which could have one additional caretaker unit, a garage, storage buildings or sheds, and residential outdoor storage for items such as recreational vehicles, boats, and utility trailers. In addition, the amendment governs many environmental matters relating to wetlands, forest management, roads, bridges, and wildlife.

Thus, we agree with the trial court that the proposed modification is "not a modification limited to an immediate area, nor is it limited to a specific site," and that the "new home sites quadruple the density within the PUD and wholly change its character." Consequently, as the trial court found, this amendment must be considered to have a general impact on the PUD, requiring that notice be mailed to all landowners within the PUD, including the Whatleys.

C.

■ While we agree with the trial court's conclusion that the 1996 amendment was one of general impact, we question its conclusion that the error in classifying it as one with limited impact is inconsequential. Specifically, we conclude that there are genuine issues of material fact that preclude summary judgment regarding whether, by their settlement agreement with the Carlston defendants, the Whatleys unconditionally waived their rights to complain about the density increase. Generally waiver is an issue for the trier of fact. *See Hallmark v. Westland Meadows Owners Ass'n,* 983 P.2d 170 (Colo.App.1999).

In finding that the Whatleys had "voluntarily, knowingly, and intelligently waived their rights to complain about the density increase and to be entitled to notice and opportunity to be heard," the trial court specifically referred to three provisions in the settlement agreement: the Whatleys agreed to allow the Carlston defendants to reserve the right to submit lot one to rezoning; the Carlston defendants agreed to pay the Whatleys an additional purchase price if they ever obtained a rezoning of the Whatley Ranch in excess of twenty-four lots; and the Whatleys agreed to execute, upon request, a letter consenting to the resubdivision of Whatley

Ranch into ten additional residential units or homesites.

For several reasons, we do not agree that these provisions can entitle both sets of defendants to judgment as a matter of law.

First, as to the county defendants, the record is not clear as to how, even assuming, without deciding, a waiver existed between the Whatleys and the Carlston defendants, the Whatleys could have waived the county's duty to provide proper published notice to the public of the hearing date for the proposed 1996 amendment or could have otherwise relieved the county defendants of their duty to comply with statutory and development code procedural requirements. In addition, it is unclear how, if the 1996 amendment were a modification of general impact, the Whatleys could have waived the rights of other landowners within the PUD to receive mailed notice of the proposed amendment.

Secondly, as to the Carlston defendants, it is unclear whether or how the Whatleys' apparent consent to allow the Carlston defendants to submit lot one to rezoning and to the addition of ten additional residential units can also be characterized as a valid waiver of their rights to notice as guaranteed by statutes and the development code.

While the Whatleys may have consented to the changes, there are genuine issues of fact as to whether they "voluntarily, knowingly, and intelligently" waived their right to receive notice of the public hearing, attend the hearing, and comment on exactly how such changes should be implemented. As the 1996 amendment shows, beyond the simple addition of units of development, many details of the PUD were changed. If given the opportunity, the Whatleys may have voiced their opinions about those changes.

Again, the resolution of these issues would affect the outcome of the case; therefore, the existence, scope, and effect of the agreement between the Whatleys and the Carlston defendants cannot be decided as a matter of law.

Accordingly, the judgment is affirmed to the extent it denies the § 1983 claim. The judgment is reversed as to the claims for injunctive and declaratory relief, and the case is remanded for further proceedings on those claims consistent with this opinion.

Judge VOGT and Judge GRAHAM concur.